**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

-and-

John R. Luze (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

**COOLEY LLP**
Cullen D. Speckhart (VSB 79096)
*Admitted to practice in New York, Virginia, Missouri and Texas; Not admitted to practice in DC, supervised by members of DC bar*
Olya Antle (VSB 83153)
*Admitted to practice in Virginia; Not admitted to practice in DC, supervised by members of DC bar*
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone:    (202) 842-7800
Facsimile:    (202) 842-7899

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ASCENA RETAIL GROUP, INC., *et al.*,[1] | ) | Case No. 20-33113 (KRH) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**FINAL ORDER GRANTING**
**DEBTORS' MOTION FOR ENTRY OF INTERIM AND**
**FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO ASSUME**
**THE CONSULTING AGREEMENT, (II) APPROVING PROCEDURES**
**FOR STORE CLOSING SALES, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"): (a) authorizing the Debtors to assume the Consulting Agreement, (b) authorizing and approving the Sale Guidelines, with such sales to be free and clear of all liens, claims, and encumbrances, and (c) granting

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at http://cases.primeclerk.com/ascena. The location of Debtor Ascena Retail Group, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 933 MacArthur Boulevard, Mahwah, New Jersey 07430.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion.

**Error! Unknown document property name.**

related relief; all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the Eastern District of Virginia*, dated August 15, 1984; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY FOUND AND DETERMINED THAT:[3]

1.  The Debtors have advanced sound business reasons for seeking to assume the Consulting Agreement and adopt the Sale Guidelines, as set forth in the Motion and at the Hearing, and entering into the Consulting Agreement is a reasonable exercise of the Debtors' business judgment and in the best interests of the Debtors and their estates.

2.  The conduct of the Sales in accordance with the Sale Guidelines will provide an efficient means for the Debtors to dispose of the Store Closure Assets.

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate. *See* Fed. R. Bankr. P. 7052.

3. The Consulting Agreement was negotiated, proposed, and entered into by the Consultant and the Debtors without collusion, in good faith, and from arm's length bargaining positions.

4. The assumption of the Consulting Agreement is a sound exercise of the Debtors' business judgment.

5. The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates and the Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief approved herein.

6. The Sales are in the best interest of the Debtors' estates.

7. The entry of this Order is in the best interest of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein; and now therefore;

IT IS HEREBY ORDERED THAT:

8. The Motion is granted on a final basis as provided herein.

9. The Debtors are authorized and empowered to take any and all further actions as may be reasonably necessary or appropriate to give effect to this Final Order.

10. To the extent of any conflict between this Order, the Sale Guidelines, and the Consulting Agreement, the terms of this Order shall control over all other documents and the Sale Guidelines shall control over the Consulting Agreement.

11. Notwithstanding Bankruptcy Rule 6004(h), this Order shall take effect immediately upon its entry.

**I.    Authority to Assume the Consulting Agreement.**

12. The assumption of the Consulting Agreement by the Debtors pursuant to section 365 of the Bankruptcy Code is approved on a final basis. The Debtors are authorized to act and perform in accordance with the terms of the Consulting Agreement, including making all

payments required by the Consulting Agreement to the Consultant, without the need for any application of the Consultant or a further order of the Court.

13. Subject to the restrictions set forth in this Order and the Sale Guidelines, the Debtors and the Consultant are hereby authorized to take any and all actions as may be necessary or desirable to implement the Consulting Agreement and the Sales and each of the transactions contemplated by the Consulting Agreement, and any actions taken by the Debtors and the Consultant necessary or desirable to implement the Consulting Agreement and/or the Sales prior to the date of this Order, hereby are approved and ratified.

14. Notwithstanding anything to the contrary in the Consulting Agreement, the Debtors and their estates shall not indemnify the Consultant for any damages arising primarily out of the Consultant's fraud, willful misconduct, or gross negligence.

II. **Authority to Engage in Store Closings.**

15. The Debtors are authorized pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code to immediately continue and conduct the Sales at the Closing Stores in accordance with this Order, the Sale Guidelines, and the Consulting Agreement, as applicable.

16. The Sale Guidelines are approved in their entirety on a final basis.

17. The Debtors are authorized to discontinue operations at the applicable Closing Stores in accordance with this Order and the Sale Guidelines.

18. All entities that are presently in possession of some or all of the Store Closure Assets in which the Debtors hold an interest that are or may be subject to the Sales or this Order hereby are directed to surrender possession of such Store Closure Assets to the Debtors or the Consultant.

19. Neither the Debtors nor the Consultant nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation)

4

any Governmental Unit (as defined under section 101(27) of the Bankruptcy Code) or landlord, to conduct the Store Closings and to take the related actions authorized herein.

### III. Conduct of the Sales.

20. All newspapers and other advertising media in which the Store Closings may be advertised and all landlords are directed to accept this Order as binding authority so as to authorize the Debtors and the Consultant to conduct the Sales pursuant to the Consulting Agreement, including, without limitation, to conduct and advertise the sale of the Store Closure Assets in the manner contemplated by and in accordance with this Order, the Sale Guidelines, and the Consulting Agreement.

21. The Debtors and Consultant are hereby authorized to take such actions as may be necessary and appropriate to implement the Consulting Agreement and to conduct the Sales without necessity of further order of this Court as provided in the Consulting Agreement or the Sale Guidelines, including, but not limited to, advertising the sale as a "store closing sale", "sale on everything," "everything must go," or similar-themed sales through the posting of signs (including the use of exterior banners at non-enclosed mall closing locations, and at enclosed mall closing locations to the extent the applicable closing location entrance does not require entry into the enclosed mall common area), use of signwalkers, and street signage.

22. Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the sale of the Store Closure Assets, to the extent that, prior to the Final Hearing, disputes arise during the course of such sale regarding laws regulating the use of sign-walkers, banners, or other advertising and the Debtors and the Consultant are unable to resolve the matter consensually, any party may request an immediate telephonic hearing with this Court pursuant to these provisions. Such hearing will, to the extent practicable, be scheduled initially no later than the earlier of (a) the Final Hearing or (b) within

two business days of such request. This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

23. The sale of the Store Closure Assets shall be conducted by the Debtors and the Consultant notwithstanding any restrictive provision of any lease, sublease, restrictive covenant, or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Store Closings or the Sales (including the sale of the Store Closure Assets), the rejection of leases, abandonment of assets, or "going dark" provisions shall not be enforceable in conjunction with the Store Closings or the Sales. Breach of any such provisions in these chapter 11 cases in conjunction with the Store Closings or the Sales shall not constitute a default under a lease or provide a basis to terminate the lease; *provided* that the Store Closings and Sales are conducted in accordance with the terms of this Order and the Sale Guidelines. The Debtors, Consultant, and landlords of the Closing Stores are authorized to enter into agreements ("Side Letters") between themselves modifying the Sale Guidelines without further order of the Court, and such Side Letters shall be binding as among the Debtors, the Consultant, and any such landlords. In the event of any conflict between the Sale Guidelines, this Order, and any Side Letter, the terms of such Side Letter shall control. In the event of a dispute between the Consultant and a landlord on the terms of a Side Letter, the Consultant and the landlord agree that they may seek an emergency hearing before the Court on no less than five business days' notice, unless the parties agree to a hearing on a shorter notice, in each respect subject to the Court's availability.

24. Except as expressly provided for herein or in the Sale Guidelines, no person or entity, including, but not limited to, any landlord, licensor, service providers, utilities, and creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Sales or the sale of Merchandise or FF&E, or the advertising and

promotion (including the posting of signs and exterior banners or the use of sign-walkers) of such Sales, and all such parties and persons of every nature and description, including, but not limited to, any landlord, licensor, service provider, utility provider, and creditor and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding, the conduct of the Store Closings, and/or (b) instituting any action or proceeding in any court (other than in the Bankruptcy Court) or administrative body seeking an order or judgment against, among others, the Debtors, the Consultant, or the landlords at the closing locations that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Sales or sale of the Merchandise or FF&E or other liquidation sales at the closing locations and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

25. In accordance with and subject to the terms and conditions of the Consulting Agreement, the Consultant shall have the right to use the Stores and all related Store services, furniture, fixtures, equipment, and other assets of the Debtors for the purpose of conducting the Sales, free of any interference from any entity or person, subject to compliance with the Sale Guidelines and this Order.

26. All sales of Store Closure Assets shall be "as is" and final. Returns related to the purchase of Store Closure Assets shall not be accepted at stores that are not participating in the Store Closings.

27. The Consultant shall not be liable for sales taxes except as expressly provided in the Consulting Agreement and the payment of any and all sales taxes is the responsibility of the Debtors. The Debtors are directed to remit all taxes arising from the Sales to the applicable

Governmental Units as and when due; *provided* that in the case of a *bona fide* dispute, the Debtors are only directed to pay such taxes upon the resolution of the dispute if and to the extent that the dispute is decided in favor of the applicable Governmental Unit. For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party other than the applicable Governmental Unit for which the sales taxes are collected. The Consultant shall collect, remit to the Debtors and account for sales taxes as and to the extent provided in the Consulting Agreement. This Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state law.

28. Pursuant to section 363(f) of the Bankruptcy Code, the Consultant, on behalf of the Debtors, is authorized to sell the Store Closure Assets, and all such sales, whether by the Consultant or the Debtors, shall be free and clear of any and all of any liens, claims, encumbrances, and other interests; *provided* that any such of any liens, claims, encumbrances, and other interests shall attach to the proceeds of the sale of the Store Closure Assets with the same validity, in the amount, with the same priority as, and to the same extent that any such liens, claims, and encumbrances have with respect to the Store Closure Assets, subject to any claims and defenses that the Debtors may possess with respect thereto and the Consultant's fees and expenses (as provided in the Consulting Agreement).

29. Neither the Sale Guidelines, Consulting Agreement, nor this Order authorize the Debtors to transfer or sell to Consultant or any other party the personally identifiable information ("PII"), which means information which alone or in conjunction with other information identifies an individual, including but not limited to an individual's first name or initial and last name, physical address, electronic address, telephone number, social security number, date of birth,

government-issued identification number, account number and credit or debit card number of any customers unless such sale or transfer is permitted by the Debtors' privacy policy and state, provincial or federal privacy and/or identity theft prevention laws and rules (collectively, the "Applicable Privacy Laws").  The foregoing shall not limit the Consultant's use of the Debtors' customer lists and mailing lists in accordance with the Consulting Agreement solely for purposes of advertising and promoting the Sales.

30. The Debtors shall remove or cause to be removed any confidential and/or PII in any of the Debtors hardware, software, computers or cash registers or similar equipment which are to be sold or abandoned so as to render the PII unreadable or undecipherable.  At the conclusion of the Sales, the Consultant shall provide the Debtors with written verification that the Consultant has not removed, copied, or transferred any customer PII.

31. On a confidential basis and for professionals' "eyes only" and upon written request (including email), the Debtors shall provide the U.S. Trustee with copies of periodic reports concerning the Sales that are prepared by the Debtors, their professionals or the Consultant; *provided* that the foregoing shall not require the Debtors, their professionals, or the Consultant to prepare or undertake to prepare any additional or new reporting not otherwise being prepared by the Debtors, their professionals, or the Consultant in connection with the Sales.

32. The Debtors and/or the Consultant (as the case may be) are authorized and empowered to transfer Store Closure Assets among, and into, the Stores.  The Debtors and Consultant are authorized to sell the Debtors' FF&E and abandon the same, in each case, as provided for and in accordance with the terms of the Consulting Agreement.

33. Within 30 days of conclusion of the Sales, the Debtors shall (a) file with the Court a summary report of the store closing process that will include (i) a list of the stores closed and (ii) gross revenue from the store closing assets sold, and (b) file with the Court and serve on the U.S. Trustee a report showing payment of each of the Consultant's fees, setting forth detail and information regarding the calculation of such fees paid to the Consultant and expenses reimbursed to the Consultant, provided that such invoice may be redacted for privilege.

34. Notwithstanding this or any other provision of this Order, nothing shall prevent or be construed to prevent the Consultant (individually, as part of a joint venture, or otherwise) or any of its affiliates from providing additional services to and/or bidding on the Debtors' assets not subject to the Consulting Agreement pursuant to an agency agreement or otherwise ("Additional Assets"). The Consultant (individually, as part of a joint venture, or otherwise) or any of its affiliates are hereby authorized to bid on, guarantee, or otherwise acquire such Additional Assets, or offer to provide additional services, notwithstanding anything to the contrary in the Bankruptcy Code or other applicable law, *provided* that such services guarantee, transaction, or acquisition is approved by separate order of this Court.

**IV.    Procedures Relating to Additional Closing Stores.**

35. To the extent that the Debtors seek to conduct the Sales at any Additional Closing Store, the Sale Guidelines and this Order shall apply to the Additional Closing Stores.

36. Prior to conducting the Sales at any Additional Closing Stores, the Debtors will (a) consult with the Required Consenting Creditors (as such term is used in the Restructuring Support Agreement) and counsel to the ABL Agent and, after obtaining their consent, (b) file a list of such Additional Closing Stores with this Court (the "Additional Closing Store List"), and serve a notice of their intent to conduct the Sales at the Additional Closing Stores on the applicable landlords (the "Additional Closing Store Landlords") and interested parties, including

the U.S. Trustee, any statutory committee of creditors appointed in the Merchant's bankruptcy case, landlord's counsel, if known, and the prepetition secured parties that comprise the Merchant's capital structure, by email (to the extent available to the Debtors) or overnight mail. With respect to Additional Closing Store Landlords, the Debtors will mail such notice to the notice address set forth in the lease for such Additional Closing Store (or, if none, at the last known address available to the Debtors).

37. The Additional Closing Store Landlords and any interested parties shall have seven days after service of the applicable Additional Closing Store List to object to the application of this Order. If no timely objections are filed with respect to the application of this Order to an Additional Closing Store, the Debtors should be authorized, pursuant to sections 105(a), and 363(b) and (f) of the Bankruptcy Code, to proceed with conducting the Sales at the Additional Closing Store in accordance with this Order, as applicable, the Sale Guidelines, and the Consulting Agreement. If any objections are filed with respect to the application of this Order to an Additional Closing Store, and such objections are not resolved, the objections and the application of this Order to the Additional Closing Store will be considered by the Court at the next regularly scheduled omnibus hearing, subject to the rights of any party to seek relief on an emergency basis on shortened notice, to the extent necessary so that the Debtors can move promptly to maximize value and minimize expenses for the benefit of their creditors and stakeholders.

**V.      Dispute Resolution Procedures with Governmental Units.**

38. Nothing in this Order, the Consulting Agreement, or the Sale Guidelines, releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of

11

the property after the date of entry of this Order.  Nothing contained in this Order, the Consulting Agreement, or the Sale Guidelines shall in any way: (a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with its rights and obligations as debtor in possession under the Bankruptcy Code.  The Store Closings and the Sales shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic, and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws").  Nothing in this Order, the Consulting Agreement, or the Sale Guidelines, shall alter or affect obligations to comply with all applicable federal safety laws and regulations.  Nothing in this Order shall be deemed to bar any Governmental Unit (as such term is defined in section 101(47) of the Bankruptcy Code) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' rights to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code or this Order.  Notwithstanding any other provision in this Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code.  Nothing in this Order shall be deemed to have made any rulings on any such issues.

39.     To the extent that the sale of Store Closure Assets is subject to any Liquidation Sale Laws, including any federal, state, or local statute, ordinance, or rule, or licensing requirement directed at regulating "going out of business," "store closing," similar inventory liquidation sales, or bulk sale laws, laws restricting safe, professional, and non-deceptive,

customary advertising such as signs, banners, posting of signage, and use of sign-walkers solely in connection with the sale and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply solely to the sale of the Store Closure Assets, the dispute resolution procedures in this section shall apply.

i. Provided that the Sales are conducted in accordance with the terms of this Order, as applicable, and the Sale Guidelines, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, the Debtors and the Consultant will be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Sales in accordance with the terms of this Order, as applicable, and the Sale Guidelines without the necessity of further showing compliance with any Liquidation Sale Laws.

ii. Within three business days after entry of this Order, the Debtors will serve by first-class mail, copies of this Order, the Consulting Agreement, and the Sale Guidelines on the following: (a) the Attorney General's office for each state where the Sales are being held; (b) the county consumer protection agency or similar agency for each county where the Sales are being held; (c) the division of consumer protection for each state where the Sales are being held; (d) the chief legal counsel for the local jurisdiction; and (e) the landlords for the Stores (collectively, the "Dispute Notice Parties").

iii. With respect to any Additional Closing Stores, within three business days after filing any Additional Closing Store List with the Bankruptcy Court, the Debtors will serve by first-class mail, copies of this Order, as applicable, the Consulting Agreement, and the Sale Guidelines on the Dispute Notice Parties.

iv. To the extent that there is a dispute arising from or relating to the Sales, this Order, as applicable, the Consulting Agreement, or the Sale Guidelines, which dispute relates to any Liquidation Sale Laws (a "Reserved Dispute"), the Bankruptcy Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Any time within ten days following entry of this Order, or service of an Additional Store Closing List, as applicable, any Governmental Unit may assert that a Reserved Dispute exists by sending a notice (the "Dispute Notice") explaining the nature of the dispute to: (a) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Steven N. Serajeddini, P.C., and Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn: John R. Luze and Jeff Michalik; and (b) Cooley LLP, 1299 Pennsylvania Avenue, NW, Suite 700, Washington, D.C. 20004-2400, Attn: Cullen D. Speckhart and Olya Antle; and (c) counsel to the Ad Hoc Group, Milbank LLP, 55 Hudson Yards, New York, New York 10001, Attn: Evan R. Fleck; (d) counsel to the ABL Agent, (i) Morgan Lewis & Bockius LLP, One Federal Street, Boston, Massachusetts 02110, Attn: Matthew F. Furlong, Julia Frost-Davies and Christopher L. Carter, and (ii) Hunton Andrews Kurth LLP, Riverfront Plaza,

East Tower, 951 East Byrd Street, Richmond, Virginia 23219, Attn: Tyler P. Brown; (e) the Consultant, SB360 Capital Partners, LLC, 1010 Norther Blvd., Great Neck, New York 11021, Attn: Aaron Miller; and (f) counsel to the Consultant, Greenberg Traurig LLP, One International Place, Suite 2000, Boston, Massachusetts 02110, Attn: Jeffrey M. Wolf.  If the Debtors and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen days after service of the notice, the Governmental Unit may file a motion with the Bankruptcy Court requesting that the Bankruptcy Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

 v. In the event that a Dispute Resolution Motion is filed, nothing in this Order, as applicable, shall preclude the Debtors, a landlord, or any other interested party from asserting (a) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (b) that neither the terms of this Order nor the conduct of the Debtors pursuant to this Order violates such Liquidation Sale Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Order or to limit or interfere with the Debtors' or the Consultant's ability to conduct or to continue to conduct the Sales pursuant to this Order, absent further order of the Bankruptcy Court.  Upon the entry of this Order, as applicable, the Bankruptcy Court grants authority for the Debtors and the Consultant to conduct the Sales pursuant to the terms of this Order, as applicable, the Consulting Agreement, and/or the Sale Guidelines and to take all actions reasonably related thereto or arising in connection therewith.  The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code.  Nothing in this Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

 vi. If, at any time, a dispute arises between the Debtors and/or the Consultant and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in this Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (iv) and (v) above by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs. Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo*.

40. Subject to paragraphs 38 and 39 above, each and every federal, state, or local agency, departmental, or Governmental Unit with regulatory authority over the Sales and all newspapers and other advertising media in which the Sales are advertised shall consider this Order as binding authority that no further approval, license, or permit of any Governmental Unit

shall be required, nor shall the Debtors or the Consultant be required to post any bond, to conduct the Sales.

41. Provided that the Sales are conducted in accordance with the terms of this Order, the Consulting Agreement, and the Sale Guidelines, and in light of the provisions in the laws that exempt court-ordered sales from their provisions, the Debtors and Consultant shall be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Sales in accordance with the terms of this Order and the Sale Guidelines without the necessity of further showing compliance with any such Liquidation Sale Laws.

## VI. Other Provisions.

42. The Consultant shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against Consultant, in each case, other than as expressly provided for in the Consulting Agreement.

43. To the extent the Debtors are subject to any state "fast pay" laws in connection with the Store Closings, the Debtors shall be presumed to be in compliance with such laws to the extent, in applicable states, such payroll payments are made by the later of: (a) the Debtors' next regularly scheduled payroll; and (b) seven calendar days following the termination date of the relevant employee, and in all such cases consistent with, and subject to, any previous orders of this Court regarding payment of same.

44. Upon request from the Debtors, and only to the extent the Debtors' interest in a Lockout Store or any Seized Inventory constitutes property of the estate, the applicable landlord in possession of a Lockout Store or any Seized Inventory shall relinquish to the Debtors access to the Lockout Store or possession of the Seized Inventory, as applicable.

45. Notwithstanding anything to the contrary in this Order, any payment made or action taken by any of the Debtors pursuant to the authority granted in this Order must be in

compliance with, and shall be subject to: (i) any interim or final order approving the Debtors' use of cash collateral and/or any postpetition financing facility (in either case, the "Cash Collateral Order"); (ii) the documentation in respect of any such use of cash collateral and/or postpetition financing; and (iii) the budget governing any such use of cash collateral and/or postpetition financing, provided, however, that notwithstanding the foregoing, the Consultant's fees and expenses shall be paid from Gross Proceeds in accordance with the terms of the Consulting Agreement and this Order, without regard to the provisions of any Cash Collateral Order or any such budget. To the extent there is any inconsistency between the term of the Cash Collateral Order and this Order, the terms of the Cash Collateral Order shall control.

46. Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim, (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, priority or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

47. The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of law in connection with the Motion is waived.

48. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Bankruptcy Rules are satisfied by such notice.

49. Notwithstanding Bankruptcy Rule and 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

50. Cause exists to shorten the notice period set forth in Bankruptcy Rule 2002, to the extent possible.

51. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

52. This Court shall retain jurisdiction with regard to all issues or disputes relating to this Order or the Consulting Agreement, including, but not limited to, (a) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit banner, street sign, and sign-walker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional, and non-deceptive manner, (b) any claim of the Debtors, the landlords and/or the Consultant for protection from interference with the Store Closings or Sales, (c) any other disputes related to the Store Closings or Sales, and (d) protection of the Debtors and/or the Consultant against any assertions of any liens, claims, encumbrances, and other interests.  No such parties or person shall take any action against the Debtors, the Consultant, the landlords, the Store Closings, or the Sales until this Court has resolved such dispute.  This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

53. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: Aug 27 2020
Richmond, Virginia

/s/ Kevin R Huennekens
United States Bankruptcy Judge

Entered on Docket: Aug 27 2020

WE ASK FOR THIS:

| | /s/ *Cullen D. Speckhart* |
|---|---|
| **KIRKLAND & ELLIS LLP** | **COOLEY LLP** |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | Cullen D. Speckhart (VSB 79096) |
| Edward O. Sassower, P.C. | *Admitted to practice in New York, Virginia, Missouri and* |
| Steven N. Serajeddini, P.C. (admitted *pro hac vice*) | *Texas; Not admitted to practice in DC, supervised by* |
| 601 Lexington Avenue | *members of DC bar* |
| New York, New York 10022 | Olya Antle (VSB 83153) |
| Telephone:      (212) 446-4800 | *Admitted to practice in Virginia; Not admitted to practice in* |
| Facsimile:       (212) 446-4900 | *DC, supervised by members of DC bar* |
| -and- | 1299 Pennsylvania Avenue, NW, Suite 700 |
| John R. Luze (admitted *pro hac vice*) | Washington, DC 20004-2400 |
| 300 North LaSalle | Telephone:      (202) 842-7800 |
| Chicago, Illinois 60654 | Facsimile:       (202) 842-7899 |
| Telephone:      (312) 862-2000 | |
| Facsimile:       (312) 862-2200 | |

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**CERTIFICATION OF ENDORSEMENT**
**UNDER LOCAL BANKRUPTCY RULE 9022-1(C)**

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ *Cullen D. Speckhart*