Brian S. Hermann (*pro hac vice* pending)
William A. Clareman (*pro hac vice* pending)
Alexander Woolverton (*pro hac vice* pending)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Tel.: (212) 373-3000
bhermann@paulweiss.com
wclareman@paulweiss.com
awoolverton@paulweiss.com

Stephen A. Metz (VA Bar No. 89738)
OFFIT KURMAN, P.A.
7501 Wisconsin Avenue, Suite 1000W
Bethesda, Maryland 20814
Tel.: (240) 507-1723
smetz@offitkurman.com

Joyce A. Kuhns (*pro hac vice* pending)
OFFIT KURMAN, P.A.
300 East Lombard Street, Suite 2010
Baltimore, Maryland 21202
Tel: (410) 209-6463
jkuhns@offitkurman.com

*Co-Counsel to Simon Property Group, Inc.
and Its Affiliates*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| RETAIL GROUP, INC., *et al.* | Case No. 20-33113 (KRH) |
| Debtors.[1] | (Jointly Administered) |

## SIMON PROPERTY GROUP, INC.'S (I) OBJECTION
## TO CONFIRMATION OF THE AMENDED JOINT CHAPTER 11
## PLAN OF REORGANIZATION OF ASCENA RETAIL GROUP, INC.
## AND ITS DEBTOR AFFILIATES AND (II) RESERVATON OF RIGHTS

Simon Property Group, Inc. ("Simon"), by and on behalf of itself and its affiliated

entities (collectively the "Simon Landlords") that are the landlords with respect to the properties

identified herein, by its undersigned counsel, files this (i) objection to the *Amended Joint Chapter*

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://cases.primeclerk.com/ascena. The location of Debtor Ascena Retail Group, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 933 MacArthur Boulevard, Mahwah, New Jersey 07430.

11 *Plan of Reorganization of Ascena Retail Group, Inc. and its Debtor Affiliates* [Docket No. 1403] (as amended, modified, or supplemented from time to time, the "Plan")[2] and (ii) reservation of rights (this "Objection"), and respectfully states as follows:

### PRELIMINARY STATEMENT

1.      When this Court approved the sale of the Debtors' Lane Bryant and premium business segment, the Court aptly observed that "when you look at it from a 15,000 foot view, this is a pretty marvelous transaction," and further commented that "the going concern aspects of this are just huge." *In re Ascena Retail Grp., Inc.*, et al., Hr'g Tr. at 38:19–21 (Bankr. E.D. Va. Dec. 8, 2020). Through the sale, the Purchaser promised to "tak[e] at least 900 stores as part of this process, preserving the business, [and] thousands of jobs," *id.* at 7:17–19, leaving for a later day the determination and process for assumption and assignment of specific store leases.

2.      Since then the Purchaser has laid bare its intention to significantly reduce the business' physical store presence in the near term. The result will be a significantly less creditworthy lessee than the entity with which the Simon Landlords originally contracted. The Purchaser's significantly reduced store footprint and mix of remaining stores not only will diminish the profitability of its brick-and-mortar business, but also will hurt its e-commerce business, as a strong physical presence drives e-commerce sales and profitability as well. The Simon Landlords' concern is supported by a depth of experience as the largest shopping center operator in the United States, as well as its own experience owning and operating retailers across the United States, including iconic retailers like J.C. Penney, Brooks Brothers, Lucky Brand, Forever 21, and Aéropostale.

---

[2]     Capitalized terms not otherwise defined herein shall have the same meanings ascribed to those terms in the Plan.

Doc#: US1:14445884v18

3.      This far greater business risk is apparent from the Purchaser's strategy of noticing for closure a number of profitable stores and reserving for possible assumption and assignment a significant proportion of the remaining leases with short remaining terms. This is in stark contrast to the Debtors' strategy of renegotiating various leases with the Simon Landlords and assuming such leases to ensure they kept profitable stores and a big enough store footprint to prudently drive e-commerce traffic and profitability as well. That is why, in the shadow of the sale negotiations with the Purchaser, the Debtors and the Simon Landlords executed the Master Agreement discussed herein, pursuant to which the Debtors and the Simon Landlords would modify various of their leases and assume them as modified. The Purchaser's about face from the Master Agreement in favor of a far different, and worse, store lease portfolio, places the business at far greater risk than anyone contemplated at the time of the sale.

4.      The Bankruptcy Code expressly protects the Simon Landlords from shouldering such business risk. Specifically, the Bankruptcy Code requires an assignee to provide landlords with adequate assurance that it has the financial and operational capability to continue to perform under leases it designates for assumption and assignment. For landlords of shopping center leases, which the Simon Landlords' leases are, an assignee must satisfy a higher burden: it must demonstrate that its financial condition and operating performance is "similar to the financial condition and operating performance of the debtor . . . as of the time the debtor became the lessee under the lease." 11 U.S.C. § 365(b)(3)(A).

5.      These protections are particularly critical where, as here, the acquirer is a newly-formed entity and is wholly owned by a parent company—Sycamore Partners Management, L.P. ("Sycamore")—that has repeatedly bankrupted retailers it acquired to the detriment of their

3

creditors,[3] and whose managing members' actions are currently at the center of fiduciary duty and fraudulent conveyance litigation surrounding, among other things, Sycamore's failed investment in Nine West. *See In re Nine West LBO Secs. Litig.*, 2020 WL 7090277, at *2–4. Based on public filings, Sycamore has agreed to bankrupt another one of its retailers, Belk, Inc.[4] And another of its retail investments, The Talbots, Inc., appears headed towards a restructuring.[5] Against this backdrop, the recent decision by the Purchaser to close 160 of 226 stores leased from the Simon Landlords—stores that the Debtors intended as recently as November to keep—gives rise to significant concerns regarding the Purchaser's financial and operational ability to satisfy their statutory and contractual commitments.

6.    Here, neither the Purchaser nor Sycamore has provided any evidence to satisfy the general standard for adequate assurance under section 365, let alone the far more stringent one under section 365(b)(3)(A) of the Bankruptcy Code applicable to shopping center leases. To the contrary, on information and belief, and based on the Purchaser's announced store closures to date, the Purchaser and Sycamore intend to operate the business by seeking to close a large number of profitable stores and assume many leases with shorter durations (including leases under which the Debtors are holdover tenants), the closure of which would surely follow in due

---

[3]    *See e.g.*, *In re Nine West LBO Secs. Litig.*, __ F. Supp. 3d __, 2020 WL 7090277 (S.D.N.Y. Dec. 4, 2020) (discussing Sycamore's and its principals' role in bankrupting Nine West through a transaction detrimental to the health of Nine West's business, facts central to the resulting litigation); *In re Aéropostale, Inc.*, 555 B.R. 369 (Bankr. S.D.N.Y. 2016) (discussing the role of Sycamore, and its employees and affiliates, at the heart of the debtors' equitable subordination claims against them).

[4]    *See Form 8-K of Belk, Inc.* (Dec. 3, 2015) (announcing the entry of a merger where Sycamore became the equity sponsor of Belk); *Summary of Plan of Reorganization, Information Regarding Key Dates, and Certain Other Matters*, PRIME CLERK (Jan. 26, 2021) (announcing Belk, Inc.'s entry into a restructuring support agreement and expected imminent bankruptcy), available at https://cases.primeclerk.com/belkballots.

[5]    *See Form 8-K of The Talbots, Inc.* (Aug. 2, 2012) (announcing the entry of a merger where Sycamore became the equity sponsor of Talbots); *Talbots Lenders Coalesce with Advisors*, DEBTWIRE (Feb. 1, 2021) (announcing that lenders to Talbots are organizing in light of near-term debt maturities and Talbots' ongoing commercial distress in the retail space).

course.  These maneuvers imperil the business and its brands, causing the Purchaser to bear no resemblance to the tenant the Simon Landlords contracted with at lease-inception.  It is on that basis alone that the Court cannot confirm the Plan to the extent it provides for the assignment to the Purchaser of leases with the Simon Landlords.

## RELEVANT BACKGROUND

7.    On July 23, 2020 (the "Petition Date"), the above-captioned debtors (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.    As of the Petition Date, the Simon Landlords were the owners, or the managing agents for the owners, of certain shopping centers in which the Debtors lease retail store space pursuant to 417 unexpired leases. Subsequently, the Debtors rejected 191 of those leases,[6] leaving 226 leases (the "Leases") outstanding, which are identified on **Exhibit A** attached hereto. The Debtors operated the Leases under their LOFT, Ann Taylor, Catherine's and Lane Bryant brands.

9.    On August 27, 2020, the Court entered an *Order (I) Authorizing and Approving Procedures to Reject or Assume Executory Contracts and Unexpired Leases, and (II) Granting Related Relief* [Docket No. 458] (the "Rejection / Assumption Procedures Order"), which provides expedited procedures for the rejection, assumption, or assumption and assignment of executory contracts and unexpired leases. That same day, the Court also entered a *Final Order Granting Debtors' Motion for Entry Of Interim and Final Orders (I) Authorizing the Debtors to Assume the Consulting Agreement, (II) Approving Procedures for Store Closing Sales, and*

---

[6]    *See* Docket Nos. 12, 120, 183, 237, 346, 603, 614, 917, 1086, 1296, 1502.

Doc#: US1:14445884v18

*(III) Granting Related Relief* [Docket No. 445] (the "Store Closing Order"), which sets forth

procedures and guidelines for the Debtors to close certain stores and sell certain property located

therein free and clear of all liens, claims, and encumbrances, and which establishes notice and

objection procedures for the same.

10.    On September 29, 2020, the Debtors filed the Plan Supplement [Docket

No. 719] to their *Amended Joint Chapter 11 Plan of Reorganization of Ascena Retail Group, Inc.*

*and Its Debtor Affiliates*, filed on September 17, 2020 [Docket No. 601], which, among other

things, included a list of Leases to be assumed pursuant to the Plan, and the proposed cure amounts

(the "Assumption List") as Exhibit C thereto.[7]  On October 13, 2020, the Simon Landlords filed

their *Limited Objection and Reservation of Rights of Simon Property Group, Inc. to Debtors'*

*Proposed Cure Amounts* [Docket No. 865] (the "Limited Objection") to the Assumption List

setting forth the associated cure costs for the Leases included on the Assumption List.

11.    On November 19, 2020, the Simon Landlords and certain of the Debtor-

lessees entered into that certain *Master Agreement Regarding Modification of Existing Leases*

(the "Master Agreement").[8]  Pursuant to the Master Agreement, the Debtors agreed to assume, or

assume and assign, all 226 remaining Leases on modified terms, meaningfully reducing the

Debtors' rent obligations to the Simon Landlords, and establishing the foundation for the Debtors'

ability to operate as a stable, going-concern business.  The Master Agreement's effectiveness was

---

[7]    Given the Court's entry of the Sale Order (as defined herein) and the Debtors' filing of the Store Closing Notice
(as defined herein), the latter of which included Leases originally included on the Assumption List, the Simon
Landlords assume that the Assumption List has been superseded by the Store Closing Notice and is now moot.

[8]    While the Master Agreement was executed by the Simon Landlords and the Debtors on November 19, 2020,
certain conditions precedent were not fulfilled and as a result the Master Agreement is not currently in effect.
The Master Agreement was not publicly filed by the Debtors, and it contains a confidentiality provision which
precludes its public filing at this time.  In advance of the Confirmation Hearing (as defined herein), the Simon
Landlords will work with the Debtors (and other parties from whom discovery is sought) on an appropriate form
of protective order to govern the manner in which the Master Agreement and other confidential documents may
be offered into evidence and referred to on the record at the Confirmation Hearing.

Doc#: US1:14445884v18

conditioned on either the entry of an order from the Court assuming (or assuming and assigning) the Leases (as modified by the Master Agreement), or the confirmation of a plan of reorganization providing for the assumption (or assumption and assignment) of the Leases.

12. Consistent with the entry into the Master Agreement, on November 23, 2020, the Debtors filed the *Amended Joint Chapter 11 Plan of Reorganization of Ascena Retail Group, Inc. and Its Debtor Affiliates (Technical Modifications)* [Docket No. 1189], which provided for the assumption of certain executory contracts and unexpired leases, including those to be assumed under the Master Agreement.

13. A hearing to confirm this chapter 11 plan never occurred. Rather, on November 26, 2020, just a week after entry into the Master Agreement, the Debtors filed the Sale Motion,[9] which, among other things, sought the approval of the sale (the "Sale") to Premium Apparel LLC (the "Purchaser"), an affiliate of Sycamore, of their remaining businesses, including Lane Bryant and the Debtors' premium business segment including Ann Taylor, LOFT, and Lou & Grey.

14. On December 8, 2020, the Court entered the Sale Order,[10] which, among other things, authorized the Debtors and the Purchaser to consummate the Sale pursuant to that certain Asset Purchase Agreement, dated as of November 26, 2020 (the "Asset Purchase

---

[9] The "Sale Motion" means the *Debtors' Motion for Entry of An Order (I) Approving the Assumption and Assignment of Certain Non-Real Property Contracts and Real Property Leases, (II) Approving the Sale of Premium and Lane Bryant and Certain Other Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the Assumption and Assignment of Certain Executory Contacts and Unexpired Leases, (IV) Establishing Rejection Procedures, and (V) Granting Related Relief* [Docket No. 1212].

[10] The "Sale Order" means the *Order (I) Approving the Assumption and Assignment of Certain Real Contracts and Real Property Leases, (II) Approving the Sale of Premium and Lane Bryant and Certain other Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (IV) Establishing Rejection Procedures, and (V) Granting Related Relief* [Docket No. 1295].

Doc#: US1:14445884v18

Agreement"), by and among Ascena Retail Group, Inc., as seller, each of the subsidiaries of the seller listed therein, and the Purchaser.

15.     Pursuant to the Sale Order, the Purchaser has until February 18, 2021 at 5:00 p.m. (New York time) (the "Designation Deadline") to designate any of the Debtors' remaining leases for assumption and assignment to the Purchaser or one of its affiliates. (Sale Order ¶ 27). The Sale Order also provided that the Rejection / Assumption Procedures Order governs the noticing and objection procedures for the designation of such leases occurring pursuant to the Sale Order and the Asset Purchase Agreement, including for any Assumed Real Property Leases (as defined in the Asset Purchase Agreement). Under both the Sale Order and the Asset Purchase Agreement, the Purchaser or its designee is obligated to cure defaults and provide adequate assurance of future performance with respect to any Assumed Real Property Lease. (*See, e.g.*, Asset Purchase Agreement §§ 2.5(g), 7.09(h); Sale Order ¶¶ 26, 37.) Moreover, Section 2.5(b) of the Asset Purchase Agreement requires that the Purchaser designate real property leases "for not less than 900 stores" as Assumed Real Property Leases (as defined in the Sale Order) on or before the Designation Deadline. At the Sale hearing, this commitment by the Purchaser to continue operating at least 900 stores was touted as central to the deal, and evidence of the Purchaser's commitment to maintain the Debtors' business as a going concern, saving thousands of jobs nationwide. *In re Ascena Retail Grp., Inc.*, et al., Hr'g Tr. at 7:15–19, 38:1–22 (Bankr. E.D. Va. Dec. 8, 2020).

16.     On December 30, 2020, the Debtors filed the Plan. The Plan, as amended, includes modifications to reflect the consummation of the Sale, provided that the Sale closes on or before the Effective Date.[11] Article V.B. of the Plan provides that if the Sale is consummated

---

[11]     If the Sale is not consummated before the Effective Date, then the Plan may be consummated in accordance with its original, pre-Sale provisions. Specifically, Article V.A. of the Plan provides for the treatment of executory

before the Effective Date, all executory contracts and unexpired leases not previously assumed, assumed and assigned, or rejected are deemed rejected unless they are the subject of a pending assumption motion.  The hearing regarding confirmation of the Plan is scheduled for February 25, 2021 at 1:00 p.m. (New York time) (the "Confirmation Hearing").

17.    On January 25, 2021, the Debtors filed a *Notice of Filing of Additional Store Closing List* [Docket No. 1540], which was subsequently amended [Docket Nos. 1570 & 1591] (the "Store Closing Notice"), pursuant to the Store Closing Order, which provided for the closure of 160 of the stores subject to the Leases with the Simon Landlords (the "Noticed Leases").  On February 3, 2021, the Debtors filed a *Notice of Rejection of Certain Executory Contracts and/or Unexpired Leases* [Docket No. 1597] (the "Rejection Notice"), which proposed the rejection of 10 of the Noticed Leases.  The Store Closing Notice was a significant departure from the Master Agreement negotiated less than three months prior, which promised to retain *all* of the 226 stores, and close none.  Although the Store Closing Notice is silent as to the ultimate treatment of the remaining 66 store Leases (the "Remaining Leases"), nearly half of them have either already expired (and are thus not capable of assumption or assumption and assignment) or will expire within the next twelve months.  With no assurance they will be renewed, additional store closures are likely.  On information and belief, the strategy reflected in this store closure plan is not unique to the Simon Landlords:  the Simon Landlords understand that, in the Purchaser's negotiations with other significant landlords, the Purchaser is similarly focusing on keeping leases with similarly short durations.

---

contracts and unexpired leases in the event the Sale is not consummated before the Effective Date of the Plan in which case unexpired leases not previously assumed, assumed and assigned, or rejected are deemed assumed by the Reorganized Debtors.

9

18.     To date, other than the Rejection Notice, no assumption or rejection motions or notices have been filed as to a majority of the Leases, and none of the Remaining Leases. However, in view of the Store Closing Notice and the Rejection Notice, it clearly stands to reason that the Purchaser does not intend to designate the Noticed Leases for assumption and assignment to the Purchaser or its designee, and the Noticed Leases will likely be rejected. To the extent the Purchaser seeks to take by assignment any of the Remaining Leases that have not expired, the Debtor and the Purchaser must demonstrate adequate assurance of the Purchaser's (or its designee's) ability to perform. Neither the Debtors nor the Purchaser has offered any evidence to satisfy this burden, and the Simon Landlords believe it cannot in the light of the stores it seeks to close and the short remaining terms on many of the unexpired Remaining Leases.[12]

19.     Given the consequences of the Sale and the Store Closing Notice for the Debtors' business and the Purchaser's ability to perform its obligations under the Remaining Leases, the Simon Landlords file this Objection (i) because neither the Debtors nor the Purchaser have carried their burden to provide adequate assurance of future performance, and (ii) to preserve their rights to receive proper treatment under the Bankruptcy Code with respect to the Leases.

## OBJECTION

20.     The Debtors must demonstrate by a preponderance of the evidence that the Plan satisfies section 1129(a) of the Bankruptcy Code. *See In re Mohammad*, 596 B.R. 34, 39 (Bankr. E.D. Va. 2019) (plan proponent has burden of persuasion by a preponderance of the evidence); *In re Smith*, 58 B.R. 652, 654 (Bankr. W.D. Va. 1985), *aff'd sub nom. In re Architectural Design, Inc.*, 59 B.R. 1019 (W.D. Va. 1986). As discussed herein, the Debtors have

---

[12]    Concurrently with filing of this Objection, the Simon Landlords have sought discovery regarding the issues raised herein.

Doc#: US1:14445884v18

failed to meet this burden because they have not provided *any* evidence of the Purchaser's or

Sycamore's financial condition and operating performance, let alone their similarity to the

Debtors' financial condition and operating performance at Lease-inception.

**A.     The Plan Must Satisfy All Applicable Provisions of the Bankruptcy Code pursuant to Section 1129(a)(1), including Applicable Provisions under Section 365.**

21.     Pursuant to section 1129(a)(1) of the Bankruptcy Code, a plan must comply

with all of the applicable provisions of the Bankruptcy Code. This provision also encompasses

the requirements of section 1123 of the Bankruptcy Code governing the contents of the plan. *See*

S. REP. NO. 95-989, at 126 (1978); H.R. REP. NO. 95-595, at 412 (1977); *see also Kane* v. *Johns-*

*Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 648-49 (2d Cir. 1988). Section

1123(b)(2) of the Bankruptcy Code states that "a plan may—subject to section 365 of this title,

provide for the assumption, rejection, or assignment of any executory contract or unexpired lease

of the debtor not previously rejected under such section." 11 U.S.C. § 1123(b)(2).

22.     A plan that seeks to assume, assume and assign, or reject an executory

contract or unexpired lease must satisfy the requirements of section 365 of the Bankruptcy Code.

As with plan confirmation, the Debtors also bear the ultimate burden of persuasion under section

365. *See In re S. Galeski Optical Co.*, 1997 WL 33807884, at *3 (Bankr. E.D. Va. Aug. 28, 1997)

("[T]he Debtor has the ultimate burden of persuasion that all requirements for assumption have

been met."); *In re Rachels Indus., Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *see also*

*Richmond Leasing Co.* v. *Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985).

23.     Under section 365(d)(4) of the Bankruptcy Code, a debtor must assume or

reject an unexpired lease of nonresidential real property by no later than the entry of an order

confirming a plan. *See* 11 U.S.C. § 365(d)(4). To assume and assign an unexpired lease of

nonresidential real property, sections 365(b) and 365(f) are read together to require that a debtor

Doc#: US1:14445884v18

must provide "adequate assurance of future performance by the assignee of such" lease and

likewise provide for the cure, including payment of any cure amounts, of any defaults under such

lease. *See* 11 U.S.C. §§ 365(b)(1), (f)(2).

24.    Moreover, if the lease to be assumed and assigned is a lease of real property

in a "shopping center," the debtor must satisfy the heightened adequate assurance requirements of

section 365(b)(3).    Section 365(b)(3) provides that, with respect to such a lease, a debtor or

assignee, as the case may be, must provide adequate assurance:

> (A) of the source of rent and other consideration due under such
> lease, and in the case of an assignment, that the financial condition
> and operating performance of the proposed assignee and its
> guarantors, if any, shall be similar to the financial condition and
> operating performance of the debtor and its guarantors, if any, as of
> the time the debtor became the lessee under the lease;
>
> (B) that any percentage rent due under such lease will not decline
> substantially;
>
> (C) that assumption or assignment of such lease is subject to all the
> provisions thereof, including (but not limited to) provisions such as
> a radius, location, use, or exclusivity provision, and will not breach
> any such provision contained in any other lease, financing
> agreement, or master agreement relating to such shopping center;
> and
>
> (D) that assumption or assignment of such lease will not disrupt any
> tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3)(A)–(D).

25.    As noted above, Article V of the Plan addresses the treatment of executory

contracts and unexpired leases, including any Leases that may be Assumed Real Property Leases

under the Asset Purchase Agreement. However, as discussed herein, neither the Debtors nor the

Purchaser has provided any evidence to support assumption and assignment of any of the

Remaining Leases, let alone evidence to carry the heightened burden applicable under section

365(b)(3).

12

**B.     The Debtors Have Demonstrated No Evidence of Adequate Assurance of Future Performance for Any of the Leases.**

26.     Given the Debtors' filing of the Store Closing Notice and the Rejection Notice, coupled with the abandonment of the Master Agreement, it is apparent that the Purchaser does not intend to designate the Noticed Leases for assumption and assignment, that the Debtors will file a notice to reject them, and that the Purchaser may designate at least a portion of the Remaining Leases for assumption and assignment.  If the Debtors do so, the Debtors have not provided any evidence to demonstrate adequate assurance of future performance for any such Remaining Leases.

27.     Each of the Leases is a lease of "real property in a shopping center" as set forth in section 365(b)(3) of the Bankruptcy Code.  *See In re Trak Auto Corp.*, 367 F.3d 237, 242 (4th Cir. 2004) (discussing the applicability of section 365(b)(3) to shopping center leases); *In re Joshua Slocum, Ltd.*, 922. F. 2d 1081, 1086–88 (3d Cir. 1990) (discussing the multi-factor test for determining whether a lease is a "shopping center" lease; *see also In re Toys "R" Us Prop. Co. I, LLC*, 598 B.R. 233, 239–41 (Bankr. E.D. Va. 2019) (applying the *Joshua Slocum* test to a proposed assumption and assignment of a shopping center lease); *In re Sun TV & Appliances, Inc.*, 234 B.R. 356, 360–70 (Bankr. D. Del. 1999) (same).  As such, section 365(b)(3)(A) requires that (i) the source of consideration under the assigned lease and (ii) the financial condition and operating performance of the proposed assignee of such lease each be similar to such condition and performance of the debtor as of the time the debtor became a lessee under such lease.  As the District Court for the Southern District in New York recently observed, the purpose of this heightened standard is to "assure the landlord that it would not have to endure a second bankruptcy any time soon."  *In re Sears Holdings Corp. (MOAC Mall Holdings LLC* v. *Transform Holdco LLC)*, 613 B.R. 51, 74 (S.D.N.Y. 2020), *vacated on other grounds*, 616 B.R. 615 (S.D.N.Y. 2020).

13

28.     The *Sears* court engaged in an in-depth analysis of the additional protections provided under section 365(b)(3) and, in that case, determined that the purchaser's provision of draft financial statements was insufficient to satisfy the more stringent requirements of section 365(b)(3).    The court reasoned that mere submissions of the assignee's net worth or current financial wherewithal are insufficient to satisfy the statutory test. *Id*. at 78.    Instead, the Debtors must demonstrate the Purchaser's "similar" financial condition and operating performance to the applicable Debtors at the commencement of each applicable Lease, which requires at least "proportionally comparable financial health between the assignee and/or its guarantors and the debtor as of the lease's inception." *Id*. at 75.    Where, as here, the assignee is a newly-formed entity, a court may look to the strength and business experience of the assignee's owner and operator in comparison to that of the debtor at the time the debtor became the lessee. *Id*. at 75–76.

29.     No evidence whatsoever has been provided to demonstrate the Purchaser's ability to satisfy this prong of section 365.    Indeed, as the *Sears* court held, a mere review of the proposed assignee's financials or benefits of the assignment transaction is insufficient to sustain a finding by the Court of the requisite similarity.    Instead, the Debtors, the Purchaser, and/or Sycamore must submit evidence to carry their burden, and this Court must review and find that such evidence demonstrates a clear similarity between the Purchaser now compared to the Debtors at the inception of the term under the respective Leases. *Id*. at 74–79 (noting that mere assignee-balance sheet equity in excess of $250 million and permission under the lease for Sears to make an assignment to an assignee with equity value over of $50 million did not demonstrate similarity, and that a court may not deviate from similarity-based standards in determining adequate assurance under section 365(b)(3)(A)).

14

30.     When the Simon Landlords originally entered into each of the Leases with the tenants, the Debtors were an established and successful retailer, in a relatively strong and well-capitalized position, with dependable historical business performance and a business plan that provided a reasonable expectation of future financial and operational success. The same cannot be said of the Purchaser. The Purchaser is a newly-formed entity controlled by Sycamore without any financial or operating track record; it is already apparent that the Purchaser is not in any way similar to the Debtors at the inception of the Leases within the meaning of section 365(b)(3)(A).

31.     The Store Closing Notice (which will result in the imminent closure of at least 160 of the Simon Landlords' leased stores) and inevitable rejection of the Noticed Leases reflects an unequivocal repudiation of the foundational assumptions and analyses underlying the Debtors' business and operational plan from just a few months ago, when it executed the Master Agreement that would have preserved all of those stores. On information and belief, the Purchaser has taken a similar approach with many unrelated shopping center landlords—*i.e.*, noticing stores for closure or leases for assumption and assignment, as the case may be, in a manner that will result in a significantly smaller number of leased stores in the near future. By repudiating the business rationale behind the Master Agreement, closing significant numbers of stores, and risking future closures by taking so many short-term leases, the Purchaser is signaling clearly that it will be in a very different and considerably weaker financial and operational position than when the Debtors first entered into the Leases.

32.     The Simon Landlords do not understand why the Purchaser would pursue such a business strategy. While the Purchaser may seek to satisfy the letter of its obligation to keep at least 900 of the Debtors' leases, its actions to date are completely at odds with its spirit. Given the near certain closure of additional stores shortly after the Effective Date, the 900-store

15

requirement will be little more than a mirage. If the Purchaser's acquired business were to substantially downsize through the near-term termination of a significant portion of its "assumed" leases, then, on information and belief, (i) it appears clear that the Purchaser would have far worse anticipated profitability than was originally represented in the context of the Court's approval of the Sale, both through reduced in-store sales and a likely corresponding drop in e-commerce performance, and (ii) it is not at all clear how the Court could find that the Purchaser has a similar financial condition or operational performance to that of the Debtors at Lease inception.

33.     Finally, to the extent Sycamore, as an owner and operator of various retail businesses, seeks to substitute its financial and operational wherewithal for the Purchaser's, that too is cold comfort and insufficient adequate assurance of future performance under existing case law. *See In re Sears*, 613 B.R. at 76 (a court may analyze the business experience of the assignee's management and owners, the financial strength and documents of the same, and other public records related thereto) (collecting cases). Over the years, Sycamore has bankrupted a number of the retailers it has either owned and operated or in which it has invested. These include, Nine West Holdings, Inc., Aéropostale, Inc., Belk, Inc. (executed restructuring agreement to file bankruptcy), and The Talbots, Inc. (appears from press reports to be headed towards a restructuring). In addition, one of Sycamore's bankrupt retail portfolio companies, Nine West, has spawned extensive litigation concerning breaches of fiduciary duty and other alleged bad acts, where many of the central inquiries relate to alleged bad acts by Sycamore's own principals. As a consequence, it can hardly be the case that Sycamore's track record provides an adequate substitute for the financial and operational wherewithal of the tenants the Simon Landlords contracted with.

34.     As the *Sears* court held in determining that another assignee failed to satisfy the adequate assurance requirements of section 365(b)(3)(A), and was, in fact, "*not similar*" to the

debtors at inception, so too must this Court find that, absent any affirmative case by the Debtors, the Purchaser, and/or Sycamore to demonstrate convincingly the Purchaser's ability to satisfy the requirements of section 365 of the Bankruptcy Code, the Plan cannot be confirmed, and the Remaining Leases cannot be assumed and assigned.

## <u>RESERVATION OF RIGHTS</u>

35.    In addition to the assertions set forth above, and given that, other than the Rejection Notice, the Debtors have yet to issue a notice assuming, assuming and assigning, or rejecting any of the Leases, the Simon Landlords hereby reserve their rights to (i) modify this Objection or submit further objections pending the outcome of discovery and the proposed treatment of the Leases; (ii) submit, proffer, or adduce any evidence or testimony in support of this Objection if and when it becomes available before or at the Confirmation Hearing; (iii) oppose the assumption, assumption and assignment or rejection of any of the Leases, including any of those proposed to be rejected under the Rejection Notice.[13] Nothing in this Objection shall constitute a waiver of any right or defense of the Simon Landlords under the Leases, the Plan, or any order of the Court.

36.    Furthermore, to the extent the Debtors file a modified Assumption List or another notice or motion assuming, assuming and assigning, or rejecting any of the Leases, the Simon Landlords hereby reserve their rights to object to any proposed cure, adequate assurance of future performance, or rejection damages, as applicable, including with respect to, among other things, the applicable lessee's obligation to pay all charges under the Leases such as unbilled taxes and rent, year-end tax and percentage rent adjustments, reconciliations, and indemnification

---

[13]    In addition, to the extent that the Debtors intend to rely on Article V.A of the Plan to assume the Leases, the Simon Landlords hereby reserve their rights to argue that the Debtors have failed to satisfy their obligation to submit any evidence of proposed cure amounts or to demonstrate their ability to provide adequate assurance of future performance under the Leases.

Doc#: US1:14445884v18

Case 20-33113-KRH   Doc 1602   Filed 02/03/21   Entered 02/03/21 19:49:20   Desc Main
Document     Page 18 of 27

obligations owed to the Simon Landlords, in each case either through the filing of a supplement to this Objection or to the Limited Objection, through another filed pleading, or at a hearing before the Court.

### ASSUMPTION AND AMENDMENT AGREEMENT AND SEPARATE ORDER

37.    Finally, if the Court decides to confirm the Plan and order the assumption or the assumption and assignment of any of the Leases to the Purchaser notwithstanding the assertions made in this Objection, then the Simon Landlords request that (i) the applicable assignees to the assumed and assigned Leases be required to enter into a short form assumption and amendment agreement, to ensure that such assignee will be directly obligated to the Simon Landlords and to modify the pertinent notice provisions of such Leases and (ii) any such assumption or assumption and assignment of the Leases be approved by a separate order of the Court, independent from the Court's order confirming the Plan.

38.    Furthermore, in the event the Court determines to approve the assumption and assignment of any of the Leases without concurrently making a finding regarding the sufficiency of the adequate assurance of future performance by the Purchaser, then the Simon Landlords request that this Court shall make a finding as to sufficiency of such adequate assurance no later than thirty (30) days after the entry of the order confirming the Plan, notwithstanding Article V.B of the Plan permitting such finding to occur as late as "90 days after the Effective Date."

*[Remainder of page intentionally left blank]*

Doc#: US1:14445884v18

**WHEREFORE**, the Simon Landlords request that the Court enter an order denying confirmation of the Plan and assumption and assignment of any of the Remaining Lease, and granting such other and further relief as the Court deems just and proper.

Dated:  February 3, 2021

/s/ Stephen A. Metz
Stephen A. Metz (VA Bar No. 89738)
OFFIT KURMAN, P.A.
7501 Wisconsin Avenue, Suite 1000W
Bethesda, MD  20814
Tel.: (240) 507-1723
smetz@offitkurman.com

Joyce A. Kuhns (*pro hac vice* pending)
OFFIT KURMAN, P.A.
300 East Lombard Street, Suite 2010
Baltimore, MD  21202
Tel: (410) 209-6463
jkuhns@offitkurman.com

-and-

Brian S. Hermann (*pro hac vice* pending)
William A. Clareman (*pro hac vice* pending)
Alexander Woolverton (*pro hac vice* pending)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019
Tel.: (212) 373-3000
bhermann@paulweiss.com
wclareman@paulweiss.com
awoolverton@paulweiss.com

Doc#: US1:14445884v18

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on the 3rd day of February, 2021, I caused to be

served a true and accurate copy of the foregoing pleading to be served by email on the parties on

the attached list with email addresses, and all parties receiving notices in this case through the

Administrative Procedures of the CM/ECF System for the United States Bankruptcy Court for the

Eastern District of Virginia.


By:    /s/ Stephen A. Metz_____
          Stephen A. Metz, Esq.

## Exhibit A

**List of Leases by Simon to the Debtors**

| Count | Project # | Property | Lease | Lease End | Unit | Rentable SF | Store Closing Notice | Rejection Notice |
|---|---|---|---|---|---|---|---|---|
| 1 | 7848 | Allen Premium Outlets | Ann Taylor Factory Store | 1/31/2021 | 300 | 7,805 | N/A | |
| 2 | 7848 | Allen Premium Outlets | Loft Outlet | 1/31/2025 | 240 | 9,514 | N/A | |
| 3 | 5201 | Arundel Mills | Loft Outlet | 1/31/2023 | 464 | 6,626 | N/A | |
| 4 | 7845 | Aurora Farms Premium Outlets | Ann Taylor Factory Store | 1/31/2022 | 0400B | 7,180 | N/A | |
| 5 | 7845 | Aurora Farms Premium Outlets | Loft Outlet | 1/31/2022 | 0360A | 6,000 | N/A | |
| 6 | 302 | Battlefield Mall | Loft | 1/31/2021 | F19 | 5,430 | N/A | |
| 7 | 8099 | Bay Park Square | Loft | 1/31/2024 | 669 | 4,750 | N/A | |
| 8 | 7962 | Calhoun Outlet Marketplace | Lane Bryant | 7/31/2021 | A057A | 5,378 | N/A | |
| 9 | 7962 | Calhoun Outlet Marketplace | Loft Outlet | 1/31/2022 | A029 | 12,000 | N/A | |
| 10 | 7883 | Carolina Premium Outlets | Loft Outlet | 1/31/2021 | 0850A | 7,200 | N/A | |
| 11 | 7883 | Carolina Premium Outlets | Ann Taylor Factory Store | 1/31/2022 | 0010A | 6,013 | N/A | |
| 12 | 8041 | Charlotte Premium Outlets | Ann Taylor Factory Store | 1/31/2025 | 200 | 6,000 | N/A | |
| 13 | 8041 | Charlotte Premium Outlets | Loft Outlet | 1/31/2025 | 908 | 6,000 | N/A | |
| 14 | 7849 | Chicago Premium Outlets | Ann Taylor Factory Store | 1/31/2020 | 423 | 7,500 | N/A | |
| 15 | 7924 | Cincinnati Premium Outlets | Loft Outlet | 1/31/2021 | 0102A | 5,779 | N/A | |
| 16 | 8057 | Clarksburg Premium Outlets | Ann Taylor Factory Store | 1/31/2027 | 510 | 6,000 | N/A | |
| 17 | 8057 | Clarksburg Premium Outlets | Loft Outlet | 1/31/2027 | 544 | 6,391 | N/A | |
| 18 | 5207 | Concord Mills | Loft | 1/31/2022 | 254 | 6,544 | N/A | |
| 19 | 7963 | Ellenton Premium Outlets | Ann Taylor Factory Store | 1/31/2020 | 700 | 5,901 | N/A | |
| 20 | 7963 | Ellenton Premium Outlets | Loft Outlet | 1/31/2022 | 805A | 7,680 | N/A | |
| 21 | 1308 | Firewheel Town Center | Loft | 1/31/2023 | D13 | 6,445 | N/A | |
| 22 | 7856 | Folsom Premium Outlets | Loft Outlet | 1/31/2023 | 1208 | 6,182 | N/A | |
| 23 | 8038 | Gloucester Premium Outlets | Loft Outlet | 1/31/2026 | 748 | 6,000 | N/A | |
| 24 | 7967 | Grove City Premium Outlets | Loft Outlet | 7/31/2022 | 200 | 6,744 | N/A | |
| 25 | 7969 | Hagerstown Premium Outlets | Loft Outlet | 1/31/2025 | 300 | 5,373 | N/A | |
| 26 | 4812 | Hamilton Town Center | Loft | 1/31/2021 | D09 | 5,800 | N/A | |
| 27 | 7909 | Houston Premium Outlets | Ann Taylor Factory Store | 1/31/2024 | 828 | 7,480 | N/A | |
| 28 | 7854 | Indiana Premium Outlets | Loft Outlet | 1/31/2021 | A100A | 5,550 | N/A | |
| 29 | 7859 | Jersey Shore Premium Outlets | Loft Outlet | 1/31/2024 | 793 | 6,484 | N/A | |
| 30 | 7860 | Johnson Creek Premium Outlets | Ann Taylor Factory Store | 1/31/2023 | C040 | 5,800 | N/A | |
| 31 | 7860 | Johnson Creek Premium Outlets | Loft Outlet | 1/31/2024 | B155 | 6,300 | N/A | |
| 32 | 5217 | Katy Mills | Loft Outlet | 1/31/2022 | 250 | 6,566 | N/A | |
| 33 | 7926 | Las Americas Premium Outlets | Ann Taylor Factory Store | 1/31/2021 | 426 | 7,550 | N/A | |
| 34 | 7865 | Leesburg Premium Outlets | Ann Taylor Factory Store | 1/31/2021 | 210 | 8,957 | N/A | |
| 35 | 7865 | Leesburg Premium Outlets | Loft Outlet | 1/31/2022 | 0901A | 4,410 | N/A | |
| 36 | 7867 | Lighthouse Place Prem Outlets | Loft Outlet | 1/31/2021 | D170A | 5,994 | N/A | |
| 37 | 7867 | Lighthouse Place Prem Outlets | Lane Bryant Outlet | 1/31/2023 | B010 | 4,488 | N/A | |
| 38 | 7932 | Merrimack Premium Outlets | Loft Outlet | 1/31/2023 | 285 | 5,990 | N/A | |

| Count | Project # | Property | Lease | Lease End | Unit | Rentable SF | Store Closing Notice | Rejection Notice |
|---|---|---|---|---|---|---|---|---|
| 39 | 8063 | Norfolk Premium Outlets | Loft Outlet | 1/31/2029 | 117 | 5,062 | N/A | |
| 40 | 7871 | North Georgia Premium Outlets | Ann Taylor Factory Store | 1/31/2020 | 150 | 7,097 | N/A | |
| 41 | 7871 | North Georgia Premium Outlets | Loft Outlet | 1/31/2025 | 0600A | 7,256 | N/A | |
| 42 | 5221 | Opry Mills | Loft Outlet | 1/31/2023 | 605 | 6,819 | N/A | |
| 43 | 7876 | Philadelphia Premium Outlets | Catherine's | 1/31/2022 | 899 | 8,722 | N/A | |
| 44 | 7876 | Philadelphia Premium Outlets | Ann Taylor Factory Store | 1/31/2023 | 299 | 8,031 | N/A | |
| 45 | 7876 | Philadelphia Premium Outlets | Loft Outlet | 1/31/2024 | 499 | 7,382 | N/A | |
| 46 | 7981 | Queenstown Premium Outlets | Loft Outlet | 1/31/2023 | B038A | 6,000 | N/A | |
| 47 | 7878 | Round Rock Premium Outlets | Loft Outlet | 1/31/2022 | 0401B | 6,189 | N/A | |
| 48 | 7982 | San Marcos Premium Outlets | Ann Taylor Factory Store | 1/31/2021 | 1320 | 7,919 | N/A | |
| 49 | 7881 | Seattle Premium Outlets | Ann Taylor Factory Store | 1/31/2021 | 602 | 7,083 | N/A | |
| 50 | 8010 | Silver Sands Prem Outlets II | Loft Outlet | 4/30/2023 | 41 | 11,701 | N/A | |
| 51 | 7884 | St. Augustine Premium Outlets | Lane Bryant | 5/31/2020 | 1007 | 5,000 | N/A | |
| 52 | 4694 | St. Johns Town Center (CC) | Lane Bryant | 3/31/2020 | B01 | 5,000 | N/A | |
| 53 | 4693 | St. Johns Town Center 1 | Loft | 1/31/2023 | P09 | 5,800 | N/A | |
| 54 | 8008 | St. Louis Premium Outlets | Ann Taylor Factory Store | 1/31/2024 | 415 | 6,000 | N/A | |
| 55 | 7913 | Tampa Premium Outlets | Ann Taylor Factory Store | 1/31/2026 | 980 | 6,000 | N/A | |
| 56 | 7913 | Tampa Premium Outlets | Loft Outlet | 1/31/2026 | 870 | 6,000 | N/A | |
| 57 | 5343 | The Mills at Jersey Gardens | Loft Outlet | 1/31/2019 | 1416 | 7,121 | N/A | |
| 58 | 5222 | The Outlets at Orange | Ann Taylor Factory Store | 1/31/2022 | 125 | 6,221 | N/A | |
| 59 | 8056 | Twin Cities Premium Outlets | Loft Outlet | 1/31/2025 | 440 | 5,468 | N/A | |
| 60 | 5054 | University Park Village | Ann Taylor | 1/31/2023 | C406 | 3,980 | N/A | |
| 61 | 7885 | Vacaville Premium Outlets | Lane Bryant | 12/31/2021 | 0252A | 4,783 | N/A | |
| 62 | 7887 | Waterloo Premium Outlets | Loft Outlet | 1/31/2021 | C086A | 6,400 | N/A | |
| 63 | 7985 | Williamsburg Premium Outlets | Loft Outlet | 1/31/2025 | E081 | 6,000 | N/A | |
| 64 | 7889 | Wrentham Village Prem Outlets | Loft Outlet | 1/31/2024 | 240 | 8,961 | N/A | |
| 65 | 8008 | St. Louis Premium Outlets | Loft Outlet | 01/31/2024 | 136 | 6,000 | N/A | |
| 66 | 7909 | Houston Premium Outlets | Loft Outlet | 01/31/2024 | 0104 | 5,981 | N/A | |
| 67 | 5201 | Arundel Mills | Ann Taylor Factory Store | 1/31/2024 | 308A | 6,242 | 1540 | |
| 68 | 145 | Barton Creek Square | Loft | 1/31/2021 | H05A | 5,796 | 1540 | |
| 69 | 302 | Battlefield Mall | Lane Bryant | 1/31/2021 | F03A | 5,500 | 1540 | |
| 70 | 7961 | Birch Run Premium Outlets | Lane Bryant | 1/31/2020 | F400 | 4,432 | 1540 | |
| 71 | 7961 | Birch Run Premium Outlets | Ann Taylor Factory Store | 1/31/2021 | F375 | 7,000 | 1540 | |
| 72 | 7961 | Birch Run Premium Outlets | Loft Outlet | 1/31/2022 | V033 | 9,000 | 1540 | |
| 73 | 4821 | Brea Mall | Ann Taylor | 1/31/2021 | 2117 | 3,596 | 1540 | |
| 74 | 5240 | Briarwood Mall | Ann Taylor | 1/31/2021 | E114 | 3,852 | 1540 | |
| 75 | 5240 | Briarwood Mall | Loft | 1/31/2022 | F130A | 4,856 | 1540 | |
| 76 | 344 | Broadway Square | Loft | 1/31/2022 | J03 | 6,146 | 1540 | |

| Count | Project # | Property | Lease | Lease End | Unit | Rentable SF | Store Closing Notice | Rejection Notice |
|-------|-----------|----------|-------|-----------|------|-------------|----------------------|------------------|
| 77 | 4822 | Burlington Mall | Ann Taylor | 1/31/2027 | 2023 | 4,566 | 1540 | |
| 78 | 7846 | Camarillo Premium Outlets | Ann Taylor Factory Store | 1/31/2022 | 738 | 7,785 | 1540 | |
| 79 | 7846 | Camarillo Premium Outlets | Loft Outlet | 1/31/2025 | 1510 | 6,351 | 1540 | |
| 80 | 7847 | Carlsbad Premium Outlets | Ann Taylor Factory Store | 1/31/2024 | C112 | 5,116 | 1540 | |
| 81 | 7883 | Carolina Premium Outlets | Lane Bryant | 1/31/2025 | 0500B | 4,075 | 1540 | |
| 82 | 8700 | Castleton Square | Lane Bryant | 1/31/2020 | 170 | 5,053 | 1540 | |
| 83 | 8700 | Castleton Square | Loft | 1/31/2021 | 110A | 5,978 | 1540 | |
| 84 | 7849 | Chicago Premium Outlets | Loft Outlet | 1/31/2025 | 985 | 5,700 | 1540 | |
| 85 | 7924 | Cincinnati Premium Outlets | Lane Bryant | 1/31/2021 | 946 | 5,923 | 1540 | |
| 86 | 7850 | Clinton Crossing Prem Outlets | Ann Taylor Factory Store | 1/31/2023 | 0400A | 5,500 | 1540 | |
| 87 | 4696 | Coconut Point | Loft | 1/31/2021 | P01 | 5,818 | 1540 | |
| 88 | 8262 | Columbia Center | Loft | 1/31/2021 | 905 | 5,480 | 1540 | |
| 89 | 5207 | Concord Mills | Lane Bryant Outlet | 3/31/2021 | 615A | 5,001 | 1540 | |
| 90 | 552 | Cordova Mall | Lane Bryant | 1/31/2021 | E511A | 5,920 | 1540 | |
| 91 | 552 | Cordova Mall | Loft | 1/31/2023 | E599 | 5,766 | 1540 | |
| 92 | 735 | Dadeland Mall | Ann Taylor | 1/31/2027 | 1610 | 11,563 | 1540 | |
| 93 | 5243 | Del Amo Fashion Center | Lane Bryant | 1/31/2026 | 509 | 6,584 | 1540 | |
| 94 | 8064 | Denver Premium Outlets | Loft Outlet | 1/31/2029 | 310 | 5,884 | 1540 | |
| 95 | 7853 | Desert Hills Premium Outlets | Ann Taylor Factory Store | 1/31/2022 | 500 | 7,360 | 1540 | |
| 96 | 7853 | Desert Hills Premium Outlets | Loft Outlet | 1/31/2025 | 1004 | 6,000 | 1540 | |
| 97 | 4781 | Empire Mall | Lane Bryant | 1/31/2022 | 968 | 6,387 | 1540 | |
| 98 | 4781 | Empire Mall | Loft | 1/31/2023 | 0209A | 6,016 | 1540 | |
| 99 | 1116 | Fashion Ctr at Pentagon City | Ann Taylor | 1/31/2023 | 0F04A | 4,487 | 1540 | |
| 100 | 2111 | Fashion Mall at Keystone | Ann Taylor | 1/31/2023 | 60 | 4,250 | 1540 | |
| 101 | 4645 | Fashion Valley | Ann Taylor | 1/31/2023 | 309 | 5,053 | 1540 | |
| 102 | 4645 | Fashion Valley | Loft | 1/31/2023 | 303 | 5,365 | 1540 | |
| 103 | 1308 | Firewheel Town Center | Lane Bryant | 1/31/2022 | D07 | 7,148 | 1540 | |
| 104 | 7857 | Gilroy Premium Outlets | Lane Bryant | 9/30/2020 | A061B | 5,000 | 1540 | |
| 105 | 7857 | Gilroy Premium Outlets | Loft Outlet | 1/31/2021 | A061A | 5,000 | 1540 | |
| 106 | 7857 | Gilroy Premium Outlets | Ann Taylor Factory Store | 1/31/2026 | C010 | 7,500 | 1540 | |
| 107 | 8038 | Gloucester Premium Outlets | Lane Bryant | 1/31/2026 | 920 | 5,101 | 1540 | |
| 108 | 5211 | Grapevine Mills | Loft Outlet | 12/31/2020 | 138A | 6,510 | 1540 | |
| 109 | 5211 | Grapevine Mills | Ann Taylor Factory Store | 1/31/2024 | 221B | 7,217 | 1540 | |
| 110 | 1325 | Greenwood Park Mall | Loft | 1/31/2021 | P140 | 5,200 | 1540 | |
| 111 | 7967 | Grove City Premium Outlets | Ann Taylor Factory Store | 1/31/2022 | 350 | 7,115 | 1540 | |
| 112 | 7967 | Grove City Premium Outlets | Lane Bryant | 1/31/2025 | 605 | 4,992 | 1540 | |
| 113 | 7969 | Hagerstown Premium Outlets | Ann Taylor Factory Store | 1/31/2021 | 605 | 6,530 | 1540 | |
| 114 | 4825 | Haywood Mall | Lane Bryant | 8/31/2022 | 2031A | 5,160 | 1540 | |

| Count | Project # | Property | Lease | Lease End | Unit | Rentable SF | Store Closing Notice | Rejection Notice |
|-------|-----------|----------|-------|-----------|------|-------------|----------------------|------------------|
| 115 | 7621 | Houston Galleria | Ann Taylor | 1/31/2027 | B2661 | 3,850 | 1540 | 1597 |
| 116 | 7623 | Houston Galleria IV | Loft | 1/31/2024 | 5370 | 5,497 | 1540 | 1597 |
| 117 | 7854 | Indiana Premium Outlets | Ann Taylor Factory Store | 1/31/2020 | B050 | 6,490 | 1540 | |
| 118 | 7854 | Indiana Premium Outlets | Lane Bryant | 1/31/2021 | F070 | 7,100 | 1540 | |
| 119 | 1711 | Ingram Park Mall | Lane Bryant | 1/31/2021 | 0T15 | 7,736 | 1540 | |
| 120 | 7858 | Jackson Premium Outlets | Loft Outlet | 1/31/2022 | 0300B | 7,515 | 1540 | |
| 121 | 7859 | Jersey Shore Premium Outlets | Ann Taylor Factory Store | 1/31/2024 | 842 | 6,471 | 1540 | |
| 122 | 7860 | Johnson Creek Premium Outlets | Lane Bryant | 1/31/2028 | B170 | 4,500 | 1540 | |
| 123 | 7703 | King of Prussia The Plaza | Loft | 1/31/2025 | 2106 | 5,264 | 1540 | 1597 |
| 124 | 7703 | King of Prussia The Plaza | Ann Taylor | 1/31/2026 | 1228A | 4,360 | 1540 | 1597 |
| 125 | 7923 | Kittery Premium Outlets_KTR | Ann Taylor Factory Store | 1/31/2025 | P006 | 5,961 | 1540 | |
| 126 | 2546 | La Plaza Mall | Loft | 1/31/2025 | 0P08A | 4,866 | 1540 | |
| 127 | 7926 | Las Americas Premium Outlets | Loft Outlet | 1/31/2022 | 152 | 6,000 | 1540 | |
| 128 | 7864 | Las Vegas North Prem Outlets | Ann Taylor Factory Store | 1/31/2025 | 1439 | 6,014 | 1540 | |
| 129 | 7863 | Las Vegas South Prem Outlets | Lane Bryant | 9/30/2021 | 248 | 4,552 | 1540 | |
| 130 | 7863 | Las Vegas South Prem Outlets | Loft Outlet | 1/31/2022 | 308 | 5,248 | 1540 | |
| 131 | 7863 | Las Vegas South Prem Outlets | Ann Taylor Factory Store | 1/31/2024 | 10 | 8,000 | 1540 | |
| 132 | 7973 | Lee Premium Outlets | Ann Taylor Factory Store | 1/31/2024 | D170 | 7,573 | 1540 | |
| 133 | 7973 | Lee Premium Outlets | Loft Outlet | 1/31/2028 | C146 | 6,213 | 1540 | |
| 134 | 7711 | Lehigh Valley Mall | Loft | 1/31/2021 | 1220 | 5,629 | 1540 | |
| 135 | 4827 | Lenox Square | Loft | 1/31/2023 | 4053A | 6,266 | 1540 | |
| 136 | 7867 | Lighthouse Place Prem Outlets | Ann Taylor Factory Store | 1/31/2022 | M010A | 7,200 | 1540 | |
| 137 | 4828 | Livingston Mall | Loft Outlet | 1/31/2022 | 1018 | 6,014 | 1540 | |
| 138 | 4666 | Menlo Park Mall | Lane Bryant | 1/31/2021 | 2020 | 8,437 | 1540 | |
| 139 | 7932 | Merrimack Premium Outlets | Ann Taylor Factory Store | 1/31/2023 | 209 | 5,771 | 1540 | |
| 140 | 7710 | Montgomery Mall | Loft | 1/31/2024 | 1195 | 5,336 | 1540 | |
| 141 | 7710 | Montgomery Mall | Ann Taylor | 1/31/2025 | 2123A | 4,000 | 1540 | |
| 142 | 2810 | Newport Centre | Loft | 1/31/2024 | 0A10C | 5,079 | 1540 | |
| 143 | 4923 | Northshore Mall | Ann Taylor | 1/31/2026 | E161 | 4,297 | 1540 | |
| 144 | 4923 | Northshore Mall | Loft | 1/31/2026 | E186 | 6,140 | 1540 | |
| 145 | 5218 | Ontario Mills | Ann Taylor Factory Store | 1/31/2022 | 904B | 5,832 | 1540 | |
| 146 | 5221 | Opry Mills | Lane Bryant Outlet | 3/31/2022 | 320 | 4,473 | 1540 | |
| 147 | 5221 | Opry Mills | Ann Taylor Factory Store | 1/31/2023 | 635 | 6,843 | 1540 | |
| 148 | 4670 | Orland Square | Lane Bryant | 1/31/2022 | 0F12A | 6,000 | 1540 | |
| 149 | 4670 | Orland Square | Loft | 1/31/2024 | 0D11A | 4,853 | 1540 | |
| 150 | 7976 | Orlando Intl Prem Outlets | Lane Bryant | 1/31/2022 | 1B12 | 5,042 | 1540 | |
| 151 | 7976 | Orlando Intl Prem Outlets | Ann Taylor Factory Store | 1/31/2023 | 2C01 | 8,000 | 1540 | |
| 152 | 7976 | Orlando Intl Prem Outlets | Loft Outlet | 1/31/2024 | 1A15 | 6,480 | 1540 | |

| Count | Project # | Property | Lease | Lease End | Unit | Rentable SF | Store Closing Notice | Rejection Notice |
|-------|-----------|----------|-------|-----------|------|-------------|---------------------|------------------|
| 153 | 7879 | Orlando Vineland Prem Outlets | Ann Taylor Factory Store | 1/31/2022 | 745 | 8,526 | 1540 | |
| 154 | 7879 | Orlando Vineland Prem Outlets | Loft Outlet | 1/31/2024 | 1601 | 6,000 | 1540 | |
| 155 | 7872 | Osage Beach Outlet Marketplace | Loft Outlet | 1/31/2022 | BB1B | 5,608 | 1540 | |
| 156 | 7707 | Oxford Valley Mall | Loft | 1/31/2021 | 2061A | 5,660 | 1540 | |
| 157 | 7603 | Penn Square Mall | Loft | 1/31/2021 | 1028 | 5,329 | 1540 | |
| 158 | 7604 | Pheasant Lane Mall | Ann Taylor | 1/31/2020 | E249 | 3,087 | 1540 | |
| 159 | 8003 | Phoenix Premium Outlets | Lane Bryant | 4/30/2023 | 910 | 4,800 | 1540 | |
| 160 | 4764 | Pier Park | Loft | 1/31/2020 | K140 | 5,668 | 1540 | |
| 161 | 7979 | Pleasant Prairie Prem Outlets | Ann Taylor Factory Store | 1/31/2020 | B041 | 6,502 | 1540 | |
| 162 | 7979 | Pleasant Prairie Prem Outlets | Loft Outlet | 1/31/2022 | A001 | 9,000 | 1540 | |
| 163 | 7979 | Pleasant Prairie Prem Outlets | Lane Bryant | 7/31/2023 | D071A | 4,155 | 1540 | |
| 164 | 5227 | Potomac Mills | Ann Taylor Factory Store | 1/31/2024 | 825 | 8,404 | 1540 | |
| 165 | 7705 | Quaker Bridge Mall | Loft | 1/31/2023 | 1224A | 5,156 | 1540 | |
| 166 | 7705 | Quaker Bridge Mall | Ann Taylor | 1/31/2024 | 1054A | 4,122 | 1540 | |
| 167 | 7908 | Rio Grande Valley Prem Outlet | Loft Outlet | 1/31/2021 | 836 | 6,750 | 1540 | |
| 168 | 7908 | Rio Grande Valley Prem Outlet | Ann Taylor Factory Store | 1/31/2022 | 525 | 7,808 | 1540 | |
| 169 | 4836 | Roosevelt Field | Ann Taylor | 1/31/2022 | 2064E | 3,435 | 1540 | |
| 170 | 4836 | Roosevelt Field | Loft | 1/31/2022 | 2066G | 5,956 | 1540 | |
| 171 | 3107 | Ross Park Mall | Ann Taylor | 1/31/2022 | 0D10A | 4,305 | 1540 | |
| 172 | 3107 | Ross Park Mall | Loft | 1/31/2023 | 0K08A | 5,354 | 1540 | |
| 173 | 7878 | Round Rock Premium Outlets | Ann Taylor Factory Store | 1/31/2022 | 1201 | 8,132 | 1540 | |
| 174 | 7957 | San Francisco Premium Outlets | Ann Taylor Factory Store | 1/31/2026 | 1280 | 6,004 | 1540 | |
| 175 | 7957 | San Francisco Premium Outlets | Loft Outlet | 1/31/2026 | 1374 | 5,506 | 1540 | |
| 176 | 5229 | Sawgrass Mills | Ann Taylor Factory Store | 1/31/2023 | 1027A | 8,926 | 1540 | |
| 177 | 7881 | Seattle Premium Outlets | Loft Outlet | 1/31/2022 | 0528A | 5,123 | 1540 | |
| 178 | 7881 | Seattle Premium Outlets | Lane Bryant | 6/30/2022 | 815 | 4,000 | 1540 | |
| 179 | 3632 | Smith Haven Mall | Loft | 1/31/2023 | S03 | 5,337 | 1540 | |
| 180 | 4674 | South Hills Village | Loft | 9/30/2022 | 1250A | 5,413 | 1540 | |
| 181 | 4838 | South Shore Plaza | Loft | 1/31/2021 | 1210A | 5,000 | 1540 | |
| 182 | 4838 | South Shore Plaza | Lane Bryant | 1/31/2023 | 2023 | 10,594 | 1540 | |
| 183 | 5259 | Southdale Center | Loft | 1/31/2022 | 1150 | 4,836 | 1540 | |
| 184 | 7605 | SouthPark | Ann Taylor | 1/31/2024 | E11B | 4,351 | 1540 | 1597 |
| 185 | 7605 | SouthPark | Loft | 1/31/2025 | P16 | 5,640 | 1540 | 1597 |
| 186 | 7884 | St. Augustine Premium Outlets | Ann Taylor Factory Store | 1/31/2022 | 405 | 6,958 | 1540 | |
| 187 | 508 | St. Charles Towne Center | Lane Bryant | 1/31/2021 | B05 | 5,002 | 1540 | |
| 188 | 4693 | St. Johns Town Center 1 | Ann Taylor | 1/31/2023 | R11A | 4,000 | 1540 | |
| 189 | 4692 | Stanford Shopping Center | Ann Taylor | 1/31/2022 | 101 | 3,616 | 1540 | |
| 190 | 5261 | Stoneridge Shopping Center | Lane Bryant | 1/31/2021 | F225 | 5,229 | 1540 | |

| Count | Project # | Property | Lease | Lease End | Unit | Rentable SF | Store Closing Notice | Rejection Notice |
|---|---|---|---|---|---|---|---|---|
| 191 | 5261 | Stoneridge Shopping Center | Ann Taylor | 4/30/2021 | E215B | 5,200 | 1540 | |
| 192 | 8087 | The Avenues | Loft | 2/29/2020 | 1420A | 5,550 | 1540 | |
| 193 | 7852 | The Crossings Premium Outlets | Ann Taylor Factory Store | 1/31/2022 | H01A | 6,941 | 1540 | |
| 194 | 7852 | The Crossings Premium Outlets | Loft Outlet | 1/31/2024 | C10 | 6,540 | 1540 | |
| 195 | 4735 | The Domain | Loft | 1/31/2021 | K03 | 5,557 | 1540 | |
| 196 | 5343 | The Mills at Jersey Gardens | Ann Taylor Factory Store | 1/31/2020 | 1022 | 6,627 | 1540 | |
| 197 | 5222 | The Outlets at Orange | Loft | 1/31/2023 | 508 | 5,619 | 1540 | |
| 198 | 7601 | The Shops at Chestnut Hill | Ann Taylor | 1/31/2022 | S219B | 3,959 | 1540 | |
| 199 | 7601 | The Shops at Chestnut Hill | Loft | 1/31/2023 | N229 | 4,991 | 1540 | |
| 200 | 9180 | The Shops at Mission Viejo | Loft | 1/31/2021 | 012C | 5,387 | 1540 | |
| 201 | 4830 | The Shops at Nanuet | Loft | 1/31/2024 | 6107 | 5,076 | 1540 | |
| 202 | 5257 | The Shops at Riverside | Ann Taylor | 1/31/2020 | 129A | 3,637 | 1540 | |
| 203 | 4676 | The Westchester | Ann Taylor | 1/31/2022 | 2860B | 4,053 | 1540 | 1597 |
| 204 | 4676 | The Westchester | Loft | 1/31/2022 | 3050 | 4,710 | 1540 | 1597 |
| 205 | 4839 | Town Center at Boca Raton | Ann Taylor | 1/31/2022 | 1148B | 4,034 | 1540 | 1597 |
| 206 | 4839 | Town Center at Boca Raton | Loft | 1/31/2024 | 1041 | 5,193 | 1540 | 1597 |
| 207 | 4840 | Town Center at Cobb | Lane Bryant | 3/31/2024 | 249A | 4,500 | 1540 | |
| 208 | 2105 | Towne East Square | Lane Bryant | 2/28/2021 | 0H12A | 5,592 | 1540 | |
| 209 | 8056 | Twin Cities Premium Outlets | Ann Taylor Factory Store | 1/31/2025 | 1015 | 5,500 | 1540 | |
| 210 | 9690 | Tyrone Square | Lane Bryant | 1/31/2020 | 260A | 5,095 | 1540 | |
| 211 | 9690 | Tyrone Square | Loft | 1/31/2021 | 625 | 6,064 | 1540 | |
| 212 | 9710 | University Park Mall | Lane Bryant and Cacique | 1/31/2021 | 1010 | 7,000 | 1540 | |
| 213 | 9710 | University Park Mall | Loft | 6/30/2021 | 1120 | 5,000 | 1540 | |
| 214 | 7885 | Vacaville Premium Outlets | Loft Outlet | 1/31/2022 | 121DB | 6,250 | 1540 | |
| 215 | 4855 | Village Shops-Mall of Georgia | Loft | 1/31/2021 | VC03 | 6,066 | 1540 | |
| 216 | 4841 | Walt Whitman Shops | Loft | 6/30/2022 | 1014 | 4,840 | 1540 | |
| 217 | 4536 | White Oaks Mall | Loft | 1/31/2023 | 0D09A | 4,915 | 1540 | |
| 218 | 7986 | Williamsburg Prem Outlets MZL | Lane Bryant | 8/31/2023 | F175 | 5,000 | 1540 | |
| 219 | 7985 | Williamsburg Premium Outlets | Ann Taylor Factory Store | 1/31/2021 | A016A | 6,930 | 1540 | |
| 220 | 8055 | Woodburn Premium Outlets | Loft Outlet | 1/31/2023 | 404 | 6,440 | 1540 | |
| 221 | 8055 | Woodburn Premium Outlets | Ann Taylor Factory Store | 1/31/2024 | 800 | 6,329 | 1540 | |
| 222 | 7888 | Woodbury Common Prem Outlets | Ann Taylor Factory Store | 1/31/2019 | 113 | 6,951 | 1540 | |
| 223 | 7888 | Woodbury Common Prem Outlets | Loft Outlet | 1/31/2023 | 0280A | 7,562 | 1540 | |
| 224 | 7607 | Woodland Hills Mall | Loft | 1/31/2020 | 0165A | 5,630 | 1540 | |
| 225 | 7889 | Wrentham Village Prem Outlets | Lane Bryant | 1/31/2022 | 470 | 4,500 | 1540 | |
| 226 | 7889 | Wrentham Village Prem Outlets | Ann Taylor Factory Store | 1/31/2029 | 0294A | 7,789 | 1540 | |