**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| In re:  RETAIL GROUP, INC., *et al.*, | Chapter 11 |
| | Case No. 20-33113-KRH |
| Debtors. | Jointly Administered |

## MEMORANDUM OPINION

This matter comes before the Court upon the *Securities Lead Plaintiffs' Motion for Entry of an Order (I) Authorizing Lead Plaintiffs to Opt Out of Third-Party Releases on Behalf of the Class or, in the Alternative, (II) Certifying the Class for a Limited Purpose Pursuant to Fed. R. Bankr. P. 7023 and 9014 and Fed. R. Civ. P. 23* [ECF No. 740] (the "Motion") filed by Joel Patterson and Michaella Corporation (the "Movants"). Retail Group, Inc. (f/k/a Ascena Retail Group, Inc.) ("Ascena") and its affiliated debtors (together with Ascena, the "Debtors") objected [ECF No. 944] (the "Objection") to the Motion. On February 25, 2021, the Court conducted a hearing (the "Hearing") on the Motion, wherein the Court heard oral argument from the Movants and the Debtors.

The Movants inexplicably waited to bring their Motion on for hearing until after the Court had confirmed the *Amended Joint Chapter 11 Plan (Technical Modifications) of Mahwah Bergen Retail Group, Inc. (F/K/A Ascena Retail Group, Inc.) and its Debtor Affiliates* (the "Plan"). *See* Order Confirming Am. Joint Chapter 11 Plan (Technical Modifications) of Mahwah Bergen Retail Group, Inc. (f/k/a Ascena Retail Group, Inc.) & Its Debtor Affiliates Ex. A, ECF No. 1811. The Motion asks this Court to authorize the Movants to untimely opt out of third-party releases (the "Third-Party Releases") provided in the confirmed Plan on behalf of all members of a putative class in connection with a class action lawsuit brought by Movants or, in the alternative, to certify

a class for the limited purpose of allowing the Movants to untimely effect an opt out of the Third-Party Releases on behalf of all class members.[1]  Mot., 25, ECF No. 740 at 25.

At the conclusion of the Hearing, the Court took the Motion under advisement.  After due consideration of the pleadings, the arguments of counsel at the Hearing, and the authorities cited by the parties in their memoranda of law, the Motion will be denied.  This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").[2]  The Court has subject-matter jurisdiction over these jointly administered bankruptcy cases (the "Bankruptcy Cases") pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).  Venue is appropriate pursuant to 28 U.S.C. § 1409.

## Factual Background

In June 2019, the Movants, on behalf of themselves and a proposed class of persons who purchased or otherwise acquired Ascena common stock between December 1, 2015 and May 17, 2017 (the "Putative Class Period"), filed a class action lawsuit alleging violations of federal securities law (the "Securities Litigation") against Ascena and two of its former officers and directors (the latter, the "Non-Debtor Defendants") in the United States District Court for the District of New Jersey (the "District Court").  Mot. ¶¶ 4, 5, ECF No. 740 at 3; Obj. ¶ 8, ECF No.

---

[1] The Movants' arguments appear to be premised on the assumption that all former Ascena equity holders within the putative class want to opt out of the Third-Party Releases.  As explained below, the Third-Party Releases are mutual releases, thereby releasing any claims held by and against the equity holders.  The Movants effectively ask this Court not only to preserve claims held by the equity holders who have already elected on an individual basis to release such claims, but also to preserve claims that may be brought against them.  Granting the Movants' requested relief would extinguish the opportunity each putative class member had to decide on its, his, or her own behalf whether the bargain of the mutual releases is fair.

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

2

944 at 6–7. The District Court appointed the Movants as the lead plaintiffs in the Securities Litigation but has not certified a class for any purpose. *See* Mot. ¶ 4, ECF No. 740 at 3.

More than a year following the commencement of the Securities Litigation, on July 23, 2020 (the "Petition Date"), the Debtors each filed voluntary petitions under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with this Court, thereby commencing the Bankruptcy Cases. As a result of the commencement of these Bankruptcy Cases, the Securities Litigation was stayed as to Ascena pursuant to section 362 of the Bankruptcy Code.

The Debtors commenced these Bankruptcy Cases to facilitate a value-maximizing restructuring transaction for the benefit of all stakeholders. Teffner Decl. ¶ 4, ECF No. 1760 at 3. Prior the Petition Date, the Debtors entered into a Restructuring Support Agreement (the "RSA") supported by 68% of their prepetition secured term lenders (the "Term Lenders"), *id.*, which initially contemplated a balance sheet restructuring. However, in exercising flexibility afforded by the RSA, after the Petition Date, the Debtors engaged in a marketing process to determine whether a sale transaction of all or a portion of the Debtors' business would result in a higher and better value for the benefit of the bankruptcy estate. *Id.* To that end, the Debtors, with this Court's approval, consummated three sale transactions pursuant to section 363 of the Bankruptcy Code. By the time that the Debtors closed on the third and final transaction on December 23, 2020, the Debtors had effectively sold substantially all of their assets. *Id.* ¶ 5, ECF No. 1760 at 3. These sale transactions were supported by nearly all Term Lenders and the Creditors' Committee.[3] Debtors' Mem. of Law in Supp. of Confirmation of Fifth Am. Plan ¶ 4, ECF No. 1762 at 15-16.

---

[3] On August 3, 2020, the Office of the U.S. Trustee (the "U.S. Trustee") appointed a statutory committee of unsecured creditors (the "Creditors' Committee") in these Bankruptcy Cases in accordance with section 1102 of the Bankruptcy Code. *See* Appointment Official Committee Unsecured Creditors, ECF No. 164.

The Debtors executed an amended and restated RSA with approximately 97.25% of the Term Lenders, all of whom strongly supported confirmation of the proposed revised Plan designed to effect distribution of the sales proceeds. *Id.* ¶ 5, ECF No. 1762 at 16. In addition, the Debtors were able to negotiate a global settlement with the Creditors' Committee, the terms of which are reflected in the Plan. As a result, the Creditors' Committee also endorsed confirmation of the Plan.[4]

The Plan includes, among other provisions, the voluntary Third-Party Releases, described as a "Release by holders of Claims or Interests":

> [E]ach Releasing Party . . . is deemed to have released and discharged each Debtor, Reorganized Debtor, and each other Released Party from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors . . . based on or relating to, or in any manner arising from, in whole or in part the Debtors (including the management, ownership or operation thereof), the purchase, sale, or rescission of any Security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan . . . or upon any other act, omission, transaction, agreement, event, or other occurrence (in each case, related to any of the foregoing) taking place on or before the Effective Date.[5]

Plan, art. VIII.F, ECF No. 1811 at 130. "Releasing Party" is defined to include, but is not limited to, all holders of interests who do not timely opt out of or object to the Third-Party Releases.[6] *Id.*

---

[4] Ultimately, the holders of claims entitled to vote on the Plan overwhelmingly voted to accept the Plan. Debtors' Mem. of Law in Supp. of Confirmation of Fifth Am. Plan ¶ 7, ECF No. 1762 at 16-17.

[5] The releases contained in the Plan also included Debtor releases as permitted under section 1123(b)(2) of the Bankruptcy Code. Plan, art. VIII.E, ECF No. 1811 at 129-130. The uncontroverted evidence established that these releases, including the Third-Party Releases, were an integral part of the global settlement negotiated among the parties. Teffner Decl. ¶ 41, ECF No. 1760 at 13. Among other things, the releases resolved indemnification claims against the estates and permitted an orderly and efficient wind-down process to proceed. They served to avoid entanglement of the estates in expensive and protracted post confirmation litigation that could only delay and dilute the negotiated distributions.

[6] Apart from this Motion, the Movants filed their *Securities Lead Plaintiffs' Objection to Confirmation of the Amended Joint Chapter 11 Plan of Reorganization of Ascena Retail Group, Inc. and its Debtor Affiliates* [ECF No. 889] (the "Confirmation Objection") and their *Securities Lead Plaintiffs' Supplemental Objection to*

art. I.A.129, ECF No. 1811 at 96. "Released Party" includes, but is not limited to, Ascena and the current and former officers and directors of Ascena, such that it would include the Non-Debtor Defendants.[7] *See id.* art. I.A.127 & 128, ECF No. 1811 at 96. Thus, in the absence of an objection or timely affirmative opt-out, the Third-Party Releases would apply to any claims of equity holders against Ascena and the Non-Debtor Defendants.

Prior to the Debtors' solicitation of votes on the Plan, the Court entered an Order (the "Disclosure Statement Order") on September 11, 2020, approving the *Disclosure Statement for the Amended Joint Chapter 11 Plan of Reorganization of Ascena Retail Group, Inc. and Its Debtor Affiliates* [ECF No. 565] (the "Disclosure Statement") in accordance with section 1125 of the Bankruptcy Code. Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Proposed Plan or Reorganization, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief, ECF No. 592. Holders of equity interests in Ascena were deemed to reject the Plan and, as such, were not entitled to vote on the Plan. Nevertheless, in order to ensure that the Disclosure Statement provided adequate information as far as reasonably practicable to enable the Debtors' equity holders to make an informed judgment about the process for opting out of the Third-Party Releases, the Court required that a *Notice of Non-Voting Status to Holders of Interests Deemed to Reject the Plan and of Third-Party Release under the Plan* [ECF No. 592] (the "Notice of Non-Voting

---

*Confirmation of the Third Amended Joint Chapter 11 Plan of Reorganization of Ascena Retail Group, Inc. and its Debtor Affiliates* [ECF No. 1622] (the "Supplemental Confirmation Objection"), wherein they objected to the Third-Party Releases. Based on the Confirmation Objection and the Supplemental Confirmation Objection, by operation of law, the Movants are not bound by the Third-Party Releases.

[7] Notably, the definition of "Released Party" also incorporates equity holders, such that the putative class members would also receive a release under the Plan. *See* Plan, art. I.A.127 & 128, ECF No. 1811 at 95-96; *see also supra* note 1.

5

Status") be sent to both current and former shareholders of Ascena, accompanied by an opt-out form (the "Release Opt-Out Form"). On the suggestion of the Securities and Exchange Commission, the Court required the Notice of Non-Voting Status to include the following language:

> **PLEASE READ – YOUR RESPONSE IS REQUIRED BY <u>OCTOBER 13, 2020</u>**
>
> - You are receiving this notice because you are a current or former shareholder of Ascena Retail Group, Inc., which filed for chapter 11 bankruptcy.
>
> - You will not receive any distribution in the bankruptcy case and your shares will be canceled.
>
> - In addition, **you will be deemed to have released whatever claims you may have against many other people and entities (including company officers and directors) unless you return the enclosed "Release Opt-Out Form" by October 13, 2020, at 5:00 P.M**. prevailing Eastern Time.
>
> - There will be no harm to you under the Plan if you return the Opt-Out Form; however, you will not receive a release.
>
> - For more specific information and instructions, please read the Release Opt-Out Form enclosed at the end of this notice as <u>Exhibit A</u>.

Disclosure Statement Order, sched. 5, ECF No. 592, at 562 (emphasis in original). As stated in the Notice of Non-Voting Status, recipients could elect to opt out of the Third-Party Releases by timely returning the enclosed Release Opt-Out Form by mail. *Id.* The notice also included a pre-addressed envelope, with pre-paid postage, for recipients to use to return the Release Opt-Out Form.[8] Obj. ¶ 14, ECF No. 944 at 6; Johnson Decl. ¶ 8, ECF No. 947 at 4.

---

[8] The Release Opt-Out Form did not require recipients to fill out or otherwise supply any information to indicate their desire to opt out. Merely returning the form prior to the deadline in the stamped, pre-addressed envelope that accompanied the form was sufficient to effectuate the opt-out. Obj. ¶¶ 15, 48; ECF No. 944 at 6, 22. The Debtors later extended the deadline to opt out of the Third-Party Releases through November 15, 2020, giving recipients of the Notice of Non-Voting Status and the Opt-Out Form nearly sixty days to make their election. *See* Obj. ¶¶ 15, 48; ECF No. 944 at 6, 22.

Ascena's equity holders hold their interests either (i) as a registered holder directly on the books and records of Ascena's transfer agent, American Stock Transfer & Trust Company, LLC ("AST"), or (ii) as a beneficial holder through a bank, broker, or other financial institution (each of the foregoing, a "Nominee") holding the equity "in street name" at The Depository Trust Company. Johnson Decl. ¶ 7, ECF No. 947 at 4. Prime Clerk LLC ("Prime Clerk"),[9] the Debtors' Court-approved claims and noticing agent, took a comprehensive, two-pronged approach to ensure that equity holders of each type received notice of the Release Opt-Out Form and the opt-out procedures approved in the Disclosure Statement. First, Prime Clerk worked with AST to identify current registered equity holders and registered equity holders who purchased or otherwise acquired Ascena stock during the Putative Class Period. Obj. ¶ 16, ECF No. 944 at 6; Johnson Decl. ¶ 8, ECF No. 947 at 4. Prime Clerk then served the Notice of Non-Voting Status, the Opt-Out Form, and the stamped return envelope on all current and former registered holders identified by AST. Obj. ¶ 16, ECF No. 944 at 6-7; Johnson Decl. ¶ 8, ECF No. 947 at 4. Next, Prime Clerk worked with Broadridge Financial Solutions, Inc. ("Broadridge") and various Nominees' mailing agents to identify current and former beneficial equity holders, including those who held Ascena stock as a Nominee during the Putative Class Period. Obj. ¶ 16, ECF No. 944 at 7; Johnson Decl. ¶ 9, ECF No. 947 at 4. Nominees were given the option to either (i) request additional copies of the Notice of Non-Voting Status and Opt-Out Forms from Prime Clerk for the purpose of forwarding such materials to their underlying beneficial holder clients, or instead (ii) provide a list of their clients directly to Prime Clerk. Johnson Decl. ¶ 9, ECF No. 947 at 4. Based on the

---

[9] The Court authorized the retention and appointment of Prime Clerk as claims and noticing agent in these Bankruptcy Cases pursuant to 28 U.S.C. § 156(c) and section 105 of the Bankruptcy Code. Order Authorizing Retention & Appointment of Prime Clerk LLC as Claims & Noticing Agent, ECF No. 69.

7

representations made to the Court at the Hearing, the Debtors provided notice of the Third-Party Releases and the opt-out procedure to hundreds of thousands of parties through this process.

In total, as of October 15, 2020, at least 200 current and former shareholders of Ascena opted out of the Third-Party Releases. Obj. ¶¶ 3, 17, ECF No. 944 at 2–3, 7; Johnson Decl. ¶ 6, ECF No. 947 at 3. A month later, by November 18, 2020, approximately 596 Release Opt-Out Forms had been received, the majority of which were submitted by purported current and former equity holders. Debtors' Mem. of Law in Supp. of Confirmation of Fifth Am. Plan ¶ 103, ECF No. 1762 at 56.

## Analysis

A party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Stanworth v. Bank of Am., N.A.* (*In re Stanworth*), 543 B.R. 760, 769 (Bankr. E.D. Va. 2016) (quoting *Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009)).[10] "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). The Movants only have the authority to act on behalf of the class if so authorized by the District Court in the Securities Litigation or if this Court grants class certification for purposes of affirmatively opting out of the Third-Party Releases.

---

[10] The process and procedures established by the Bankruptcy Code are largely premised upon the requirement for parties to take affirmative action to protect their interests in a bankruptcy case. For example, creditors must timely file proofs of claim in order to obtain a distribution from estate assets, creditors must timely object in order to avoid discharge of their claims, and creditors must file ballots to vote to accept or reject a plan of reorganization to which they will be bound. *See, e.g.*, 11 U.S.C §§ 501, 523, 1126.

8

*The Movants' Designation as Lead Plaintiffs in the Securities Litigation Does Not Confer the Requisite Authority to Represent the Putative Class in the Bankruptcy Cases.*

The Movants allege that they have the "inherent authority" to opt out of the Third-Party Releases on behalf of the putative class members, based upon their appointment as lead plaintiffs by the District Court and the Movants' fiduciary obligations to the putative class members arising from such appointment. Mot. ¶ 17, ECF No. 740 at 8–9. In their role as lead plaintiffs, the Movants have been given the authority in the District Court to "amend the [a]mended [c]omplaint, defend against dispositive motions, take and defend discovery, and engage in numerous other litigation-related activities without the [c]lass ever being certified." *Id.* ¶ 18, ECF No. 740 at 9. In other words, the Movants argue that their status in the District Court authorizes them to represent the putative class members before this Court.

The Movants' appointment as lead plaintiffs by the District Court in the Securities Litigation is not determinative of whether the Movants may represent the interests of the putative class before this Court. While the Fourth Circuit has not addressed this issue, the Court finds the Second Circuit's decision in *Lucas v. Dynegy Inc.* (*In re Dynegy*), 770 F.3d 1064, 1071 (2d Cir. 2014) to be instructive. In *Dynegy*, as in the case at bar, the lead plaintiff in a federal securities class action attempted to opt out of a release included in the debtors' plan of reorganization on behalf of himself and the putative class. *Id.* at 1067. The Second Circuit rejected the lead plaintiff's arguments and held that the lead plaintiff lacked the authority to do so. In particular, the Second Circuit found that the order of the district court appointing the lead plaintiff in the class action "provided no . . . authorization" with regard to the bankruptcy court. *Id.* at 1068. "[I]t is well-settled that consent to being a member or the representative of a class in one piece of litigation is not tantamount to a blanket consent to any litigation the class counsel may wish to pursue." *Id.* (citing *Reid v. White Motor Corp.*, 886 F.2d 1462, 1471-72 (6th Cir. 1989)). Additionally, the

9

Second Circuit held that the lead plaintiff's fiduciary obligations to putative class members "do not 'confer on him the status of a class representative in the bankruptcy proceeding for a class that has never been designated.'" *Id.* (quoting *Lucas v. Dynegy, Inc.* (*In re Dynegy, Inc.*), No. 12 Civ. 8908 (JGK), 2013 WL 2413482, at *8, 2013 U.S. Dist. LEXIS 78479, at *23 (S.D.N.Y. June 4, 2013)).

Similarly, here, the order appointing the Movants as lead plaintiffs in the Securities Litigation does not provide any authorization for the Movants in connection with these Bankruptcy Cases, and the Movants' fiduciary duties to the putative class members in the Securities Litigation do not confer upon the Movants any status for these Bankruptcy Cases. For these reasons, the Court finds that the Movants have no inherent authority to opt out of the Third-Party Releases on behalf of the putative class.

*The Court Declines to Certify a Class.*

The Movants next argue that the Court should certify a class under Rule 23 of the Federal Rules of Civil Procedure (the "Civil Rules") for the "limited purpose" of opting out of the Third-Party Releases on behalf of the putative class. Mot. ¶ 24, ECF No. 740 at 12. The Movants argue both that Civil Rule 23 applies to this proceeding and that its requirements are satisfied.[11] *Id.* ¶¶ 20–48, ECF No. 740 at 10–23.

Class certification is governed by Civil Rule 23, made applicable to bankruptcy proceedings by Bankruptcy Rule 7023. Fed. R. Civ. P. 23; Fed. R. Bankr. P. 7023. By its terms, Bankruptcy Rule 7023 only makes Civil Rule 23 applicable to adversary proceedings. However,

---

[11] Because the Court declines, for the reasons stated herein, to apply Civil Rule 23 to this proceeding, the Court does not reach the issue of whether the requirements of Civil Rule 23 are satisfied. *See Gentry v. Siegel*, 668 F.3d 83, 93 (4th Cir. 2012) ("Civil Rule 23 factors do not become an issue until the bankruptcy court determines that [Bankruptcy] Rule 7023 applies by granting a [Bankruptcy] Rule 9014 motion.").

10

Bankruptcy "Rule 9014 authorizes the bankruptcy court to 'direct' that one or more of the adversary rules, including [Bankruptcy] Rule 7023, 'shall apply' to a contested matter." *Gentry v. Siegel*, 668 F.3d 83, 92 (4th Cir. 2012) (citing cases). Under this framework, "[t]wo decisions must be made: (1) [w]hether [Bankruptcy] Rule 7023 should be made applicable . . .; and (2) whether a class should be certified under [Civil] Rule 23." *In re Comput. Learning Ctrs., Inc.*, 344 B.R. 79, 86 (Bankr. E.D. Va. 2006). Regarding the first step, a bankruptcy court has "broad discretion" in deciding whether to apply Bankruptcy Rule 7023.[12] *Gentry*, 668 F.3d at 92 (citing cases). "Each bankruptcy case must be assessed on a case-by-case basis to determine whether allowing a class action to proceed would be superior to using the bankruptcy . . . process." *Id.* at 94.

The Court declines to apply Bankruptcy Rule 7023 to certify a class. The Movants have presented no evidence to the Court that class certification would be superior to the process that has already been approved and implemented in these Bankruptcy Cases for notifying and allowing the putative class members to opt out of the Third-Party Releases on their own behalf.[13] Although the

---

[12] The Debtors argue that the Court cannot apply Bankruptcy Rule 7023 because the Movants "fail to identify any actual contested matter" to which the rule may apply. Obj. ¶ 25, ECF No. 944 at 11. However, "[a]ll disputes in bankruptcy are either adversary proceedings or contested matters." *In re Am. Reserve Corp.*, 840 F.2d 487, 488 (7th Cir. 1988). Indeed, the Second Circuit in *Dynegy* rejected this very same argument. 770 F.3d at 1069 ("An adversary proceeding must fall within one of the ten categories defined in Bankruptcy Rule 7001. The proceeding here does not fit within any of those categories; therefore it must be a contested matter."). Although the Court here ultimately declines to apply Bankruptcy Rule 7023 on other grounds, the Court finds that this proceeding constitutes a contested matter to which Bankruptcy Rule 7023 may apply in the Court's discretion.

[13] Importantly, the opt-out process approved in these Bankruptcy Cases mirrors or is substantially similar to that which has been previously approved by bankruptcy courts across the country. *See In re Vista Proppants & Logistics, LLC*, Case No. 20-42002-ELM-11, 2020 WL 6325526 at *7, 2020 Bankr. LEXIS 3018 at *21 (Bankr. N.D. Tex. Oct. 28, 2020) (confirming Chapter 11 plan where holders of claims who failed to opt out of third-party releases "would be deemed to have expressly and unconditionally consented to the release"); *In re Ditech Holding Corp.*, 606 B.R. 544, 630 (Bankr. S.D.N.Y. 2019) (finding opt-out process appropriate where releases were "conspicuously disclosed in boldface type" and ballots provided notice of "the requirement to affirmatively opt out of the Third Party Release in order to not be bound thereby"); *In re Indianapolis Downs, LLC*, 486 B.R. 286, 306 (Bankr. D. Del. 2013) (characterizing as consensual third-party releases included in plan of reorganization where "parties were provided detailed instructions on how to opt out, and had the opportunity to do so"); *In re Conseco, Inc.*, 301 B.R. 525, 528 (Bankr. N.D. Ill. 2003) (finding consensual third-party release

11

Movants assert that "a class may be certified" in this circumstance, they give no explanation for why the Court should apply Bankruptcy Rule 7023 in the first place. Mot. ¶ 22, ECF No. 740 at 11. Instead, the Movants rely solely upon conclusory assertions with no evidentiary support that the requirements for certifying a class under Civil Rule 23 are satisfied. As the Court has noted, this argument ignores the crucial first step in the analysis. The requirements for class certification under Civil Rule 23 do not become an issue until the Court determines that Bankruptcy Rule 7023 should apply to the matter at bar. *See supra* note 11.

The uncontroverted evidence provided by the Debtors demonstrates that the bankruptcy process, including the Debtors' Court-approved efforts to identify, notify, and allow the putative class members to opt out of the Third-Party Releases, was both fair and adequate. The Court finds that the Notice of Non-Voting Status and Release Opt-Out Form approved by the Disclosure Statement Order were sent to both current and former Ascena shareholders. Obj. ¶ 16, ECF No. 944 at 6–7; Johnson Decl. ¶¶ 8–9, ECF No. 947 at 4-5. In particular, the Debtors' claims and noticing agent engaged two vendors, AST and Broadridge, to identify former equity holders who may have held Ascena stock during the Putative Class Period. Obj. ¶ 16, ECF No. 944 at 6–7; Johnson Decl. ¶¶ 8–9, ECF No. 947 at 4-5. Each of the individuals identified by these vendors received the Notice of Non-Voting Status and Release Opt-Out Form. Obj. ¶ 16, ECF No. 944 at 6–7; Johnson Decl. ¶¶ 8–9, ECF No. 947 at 4-5. Furthermore, Nominees of interest holders had the option to direct Prime Clerk to serve these materials on their underlying clients on behalf of the Nominee such that Prime Clerk, and ultimately the bankruptcy estates, could bear the cost and burden of forwarding the materials appropriately. Obj. ¶ 16, ECF No. 944 at 6–7; Johnson Decl.

---

included in plan of reorganization that bound "only those creditors who agreed to be bound, either by voting for the Plan or by choosing not to opt out of the release").

¶¶ 8–9, ECF No. 947 at 4-5.  The Court-approved Disclosure Statement ensured that the Notice of Non-Voting Status was tailored such that it stated in clear, conspicuous language the implications of the Third-Party Releases, the process for opting out, and the deadline for doing so.  Disclosure Statement Order, sched. 5, ECF No. 592, at 562.  Recipients also received a pre-addressed, postage-paid envelope that the recipient could conveniently use to return the Release Opt-Out Form.  Obj. ¶ 14, ECF No. 944 at 6; Johnson Decl. ¶ 8, ECF No. 947 at 4.  Through this process, the Debtors have given wide notice of the Third-Party Releases included in the Plan and have simplified the process for opting out of the Third-Party Releases.  The Debtors' evidence demonstrates that hundreds of current and former equity holders had elected to opt out of the Third-Party Releases using these procedures.  Obj. ¶ 17, ECF No. 944 at 7; Johnson Decl. ¶ 6, ECF No. 947 at 3; Debtors' Mem. of Law in Supp. of Confirmation of Fifth Am. Plan ¶ 103, ECF No. 1762 at 56.  Based on this evidence, the Court finds that the Third-Party Releases were consensual.  *See In re Ditech Holding Corp.*, 606 B.R. 544, 630 (Bankr. S.D.N.Y. 2019) (finding third-party releases consensual where releases were "conspicuously disclosed in boldface type" and parties were "properly served with the ballot and related plan documents").  As such, they allowed each individual putative class member to choose, on his, her, or its own behalf, whether to release, and to receive a release of, any claims.

The Movants have been content to allow this bankruptcy process to proceed to plan confirmation.  At the time of the Hearing, their Motion had been pending for nearly five months.[14]  Rather than bring the issues set forth in their Motion before the Court, the Movants elected to adjourn the Hearing on their Motion several times.  Each time, they have chosen to set their Motion for hearing following the hearings previously scheduled and adjourned to consider plan

---

[14] The Motion was filed on October 2, 2020.  The Objection was filed on October 16, 2020.

confirmation. *See* Notice of Adjournment of Hr'g, ECF Nos. 979, 1078, 1141. As a result of the Movants' election, this Motion comes before the Court after the bankruptcy estates have incurred the time and expense of implementing the costly notification procedures mandated by the Disclosure Statement Order and just as the Debtors prepare to emerge from a months-long reorganization process, with a confirmed Plan that enjoys the broad support of more than 97% of the Debtors' Term Lenders and more than 87% of the Debtors' general unsecured creditors. *See* Debtors' Mem. of Law in Supp. of Confirmation of Fifth Am. Plan, ¶ 7, ECF No. 1762 at 16-17.

Now that the Movants have determined that the bankruptcy process has not worked in their favor, they seek to frustrate the Debtors' emergence from bankruptcy after a lengthy and successful reorganization that has saved thousands of jobs and that will ultimately return millions of dollars to the creditors of these bankruptcy estates. Movants, essentially, request a second bite at the apple in order to avoid being bound by the terms of the confirmed Plan.

At no point during the pendency of the Debtors' Bankruptcy Cases did the Movants seek relief under section 362(d) of the Bankruptcy Code, as they had the right to do, for modification of the automatic stay to permit them to pursue class certification in the District Court for the "limited purpose" of opting out of the Third-Party Releases on behalf of the putative class in this case. At no point during the pendency of the Debtors' Bankruptcy Cases did the Movants bring their Motion before this Court asking for a determination "whether allowing a class action to proceed would be superior to using the bankruptcy . . . process." *Gentry*, 668 F.3d at 94.

The Movants have failed to present any evidence that any putative class member who had not opted out of the Third-Party Releases wished to do so. The Debtors have presented evidence that established that all known current and former equity holders in the Putative Class Period were provided with the Court-approved form of notice and a sixty-day opportunity to respond. Further,

14

the Debtors' evidence established that current and former equity holders effectively did exercise their ability to opt out of the Third-Party Releases. As such, not only have the Movants failed to adduce "any evidence that [the putative class members] may be incapable of asserting their own rights," *see In re Dynegy, Inc.*, 770 F.3d at 1070, the evidence before the Court clearly establishes that the putative class members have been able to represent their own interests at will. To now grant the Movants the authority to represent those interests would threaten to undo the choice that individual equity holders have made up to this point and cause confusion with which neither the bankruptcy estates nor the putative class members should be saddled.

Under these circumstances, the Court finds that the bankruptcy process has done its job. The Court finds that the bankruptcy process utilized in the case at bar is superior to allowing a class action to proceed and that class certification is unnecessary in this case. Accordingly, the Court declines to apply Bankruptcy Rule 7023 to this proceeding. *See Gentry*, 668 F.3d at 93 (finding that bankruptcy court did not abuse its discretion in declining to apply Bankruptcy Rule 7023 where "the process was working well"); *see also In re Movie Gallery, Inc.*, No. 10-30696-DOT, 2012 WL 909501, at *5, 2012 Bankr. LEXIS 1099, at *16 (Bankr. E.D. Va. Mar. 15, 2012) (finding request to certify a class "far too late" when certification "would serve only to throw the entire administration of the case into chaos").

For the foregoing reasons, the Motion is denied. An appropriate Order will issue.

Dated:   March 5, 2021              /s/ Kevin R. Huennekens
                                    UNITED STATES BANKRUPTCY JUDGE


Entered on Docket: March 5, 2021