**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

-and-

John R. Luze (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

**COOLEY LLP**
Cullen D. Speckhart (VSB 79096)
Olya Antle (VSB 83153)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone:      (202) 842-7800
Facsimile:      (202) 842-7899

*Co-Counsel to the Reorganized Debtors*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## NORFOLK DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RETAIL GROUP, INC., *et al.*,[1] | ) | Case No. 20-33113 (FJS) |
| | ) | |
| Reorganized Debtors. | ) | (Jointly Administered) |
| | ) | |

## MOTION FOR ENTRY OF AN ORDER (A) MODIFYING AND CONFIRMING THE AMENDED CHAPTER 11 PLAN CONSISTENT WITH THE DISTRICT COURT'S MEMORANDUM OPINION, (B) RATIFYING ACTIONS TAKEN IN RELIANCE ON THE ORDER DATED FEBRUARY 25, 2021, AND (C) GRANTING RELATED RELIEF

The above-captioned reorganized debtors (collectively, the "Reorganized Debtors," and before

the effective date of the chapter 11 plan previously confirmed in these cases, the "Debtors"), file this

motion (the "Motion") seeking entry of an order, substantially in the form attached hereto (the

"Supplemental Order"), (a) modifying and confirming the *Amended Joint Chapter 11 Plan (Technical*

*Modifications) of Mahwah Bergen Retail Group, Inc. (f/k/a Ascena Retail Group, Inc.) and Its Debtor*

---

[1]   A complete list of each of the Reorganized Debtors in these chapter 11 cases may be obtained on the website of
the Reorganized Debtors' claims and noticing agent at http://cases.primeclerk.com/ascena.   The location of
Reorganized Debtor Mahwah Bergen Retail Group, Inc.'s principal place of business and the Reorganized
Debtors' service address in these chapter 11 cases is 933 MacArthur Boulevard, Mahwah, New Jersey 07430.

*Affiliates* [Docket No. 1794] (the "Plan") and effectuating the *Order Confirming the Amended Joint Chapter 11 Plan (Technical Modifications) of Mahwah Bergen Retail Group, Inc. (f/k/a Ascena Retail Group, Inc.) and Its Debtor Affiliates* [Docket No. 1811] (the "Confirmation Order") as of February 25, 2021 (the "Confirmation Date"), consistent with the Memorandum Opinion [Docket No. 2548] (the "Remand Opinion") issued by the District Court for the Eastern District of Virginia (the "District Court") and the *Order Remanding Case to Bankruptcy Court; Ordering Reassignment* [Docket No. 2549] (the "Remand Order"), (b) ratifying all actions taken to date in reliance on the Confirmation Order, and (c) granting related relief.[2]  In further support of the Motion, the Reorganized Debtors respectfully state as follows:

## Introduction

1.      By this Motion, the Reorganized Debtors seek to implement the narrow mandate of the District Court set forth in the Remand Order while preserving the highly successful restructuring transactions consummated in connection with the Plan and, by extension, preserving value for stakeholders and protecting the countless parties who have acted in reliance on the Confirmation Order.  Before filing these chapter 11 cases, the Debtors operated retail brands specializing in apparel for women and girls.  Like numerous retailers, the Debtors commenced chapter 11 cases as a result of unprecedented economic turmoil during the height of the COVID-19 pandemic.  Yet, despite the global pandemic, the Debtors and their stakeholders negotiated and obtained support for a complex and value-maximizing restructuring that would ultimately preserve the business as a going-concern.

2.      At the outset of these chapter 11 cases, the Debtors executed a Restructuring Support Agreement with a support level that ultimately grew to over 97.25 percent of the Term

---

[2]     Capitalized terms used but not defined herein shall have the meaning set forth in the Confirmation Order or the Plan, as applicable.

Lenders during the course of the chapter 11 cases.  Additionally, while pursuing confirmation of

the Plan, the Debtors, with the support of the Term Lenders, engaged in a comprehensive

marketing process that ultimately resulted in a series of value-maximizing sale transactions.  This

process not only resulted in a higher and better value for the benefit of all stakeholders but

preserved the business as a going-concern, thereby maintaining thousands of jobs, providing

ongoing value to landlords and vendors, and keeping the retail brands alive for consumers.

3.    To implement this multi-faceted restructuring, the Debtors filed a plan of

reorganization to distribute funds from the sale transactions and facilitate an orderly wind-down

process.  The Plan enjoyed overwhelming support of classes entitled to vote—with 97.25 percent

of Term Loan Claims and 87.54 percent of General Unsecured Claims voting to accept the Plan.[3]

Importantly, the Plan also embodied a number of value-maximizing settlements, including a global

settlement with the Creditors' Committee that provided increased distributions for holders of

unsecured claims.  At Confirmation, only three outstanding objections remained to the Plan—

mainly, on account of the Plan's Third-Party Release and Exculpation Provisions—which the

Bankruptcy Court overruled in approving the Plan and entering the Confirmation Order.[4]

---

[3]    *See Declaration of Alex Orchowski of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Amended Joint Chapter 11 Plan of Reorganization of Ascena Retail Group, Inc. and Its Debtor Affiliates* [Docket No. 1135] (the "Voting Report").

[4]    *See Objection of the United States Trustee to Debtors' Motion for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Proposed Joint Plan of Reorganization; (III) Approving the Forms of Ballots and Notices in Connection Therewith; (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 411]; *Objection of the United States Trustee to Confirmation of Amended Joint Chapter 11 Plan of Reorganization of Ascena Retail Group, Inc. and Its Debtor Affiliates* [Docket No. 746]; *Objection by the U.S. Securities and Exchange Commission to Confirmation of Debtors' Amended Joint Chapter 11 Plan* [Docket No. 849]; *Securities Lead Plaintiffs' Objection to Confirmation of the Amended Joint Chapter 11 Plan of Reorganization of Ascena Retail Group, Inc. and Its Debtor Affiliates* [Docket No. 889]; *Securities Lead Plaintiffs' Supplemental Objection to Confirmation of the Third Amended Joint Chapter 11 Plan of Reorganization of Ascena Retail Group, Inc. and Its Debtor Affiliates* [Docket No. 1622]. *Objection of the United States Trustee to Confirmation of Amended Joint Chapter 11 Plan of Reorganization of Ascena Retail Group, Inc. and Its Debtor Affiliates* [Docket No. 1697].

4.      Following Confirmation and the Plan Effective Date of March 5, 2021, the Reorganized Debtors took all actions necessary to implement, effectuate, and consummate the terms of the Plan and Confirmation Order, including: (i) removing the Board of Directors; (ii) appointing the Plan Administrator as the sole representative, manager, and officer of the Reorganized Debtors; (iii) vesting all rights, powers, and duties necessary to carry out its responsibilities under the Plan and Confirmation Order in the Plan Administrator; (iv) creating and funding the GUC Trust with $7.25 million; (v) appointing the GUC Trustee; (vi) dissolving the Creditors' Committee; (vii) distributing over $450 million to prepetition lenders; (viii) resolving the Disputed Claims and paying over $5 million to claimants with Allowed Priority and Administrative Claims; (ix) cancelling all Interests in Ascena, including without limitation, any share certifications representing any Interests in Ascena, and issuing the Single Share of the Reorganized Debtors' common stock to the Plan Administrator to hold in trust as a custodian for the benefit of the Term Loan Lenders; (x) assuming and rejecting executory contracts and unexpired leases; (xi) filing appropriate tax returns; (xii) implementing transactions required to effectuate the Restructuring Transactions; and (xiii) taking all other actions to wind down and dissolve the Debtors' Estates.

5.      Since the Effective Date, the Reorganized Debtors and the Plan Administrator have been diligent in their efforts to review and reconcile the approximately 3,351 Administrative, Secured, and Priority Claims asserted against the Debtors' chapter 11 estates in the aggregate amount of approximately $506,000,000. Collectively, the Debtors (prior to the Effective Date of the Plan) and the Plan Administrator have filed 43 omnibus claim objections, objecting to nearly 2,700 proofs of claim filed by claimants asserting administrative, priority, and secured status. As

of the date hereof, the Bankruptcy Court has entered over 40 orders sustaining or otherwise resolving these objections to approximately 2,629 proofs of claim.

6.      As of the Effective Date, there were approximately 11,600 asserted and scheduled general unsecured claims in the aggregate amount of approximately $38.2 billion.  In addition, several hundred additional claims asserted as secured, administrative, or priority have been reclassified as general unsecured, necessitating further review and reconciliation. To date, the GUC Trust has filed ten (10) omnibus objections, resulting in the disallowance or modified request treatment to approximately 1,000 claims.  Through the objections and various stipulations, the GUC Trust has disallowed $37.1 billion in the aggregate of general unsecured claims, and the process for reconciliation remains ongoing.

7.      After the Effective Date of the Plan, in March 2021, the lead plaintiffs of a putative securities class action (the "Securities Lead Plaintiffs") and the United States Trustee (the "U.S. Trustee") appealed entry of the Confirmation Order; specifically, challenging the Third-Party Release and Exculpation Provisions contained in the Plan.[5]  Importantly for purposes of this Motion, neither the Bankruptcy Court nor the District Court stayed consummation of the Plan pending the appeal;[6] instead, the appeal proceeded over the course of ten (10) months as the

---

[5]     *See Notice of Appeal of Memorandum Opinion and Order Confirming the Amended Joint Chapter 11 Plan (Technical Modifications) of Mahwah Bergen Retail Group, Inc. (f/k/a Ascena Retail Group, Inc.) and Its Debtor Affiliates* [Docket No. 1859]; *U.S. Trustee Notice of Appeal* [Docket No. 1937].  As discussed further below, the Securities Lead Plaintiffs also challenged the Court's order denying standing to opt out of the Third Party Release Provisions on behalf of the class, or alternatively, to certify the class for a limited purpose.  *See Order Denying Securities Lead Plaintiffs' Motion for Entry of an Order (I) Authorizing Lead Plaintiffs to Opt Out of Third-Party Releases on Behalf of the Class or, in the Alternative, (II) Certifying the Class for a Limited Purpose Pursuant to Fed. R. Bankr. P. 7023 and 9014 and Fed. R. Civ. P. 23* [Docket No. 1842].  *See Notice of Appeal* [Docket No. 1860].

[6]     *See Order Denying Motion of the United States Trustee for a Stay of Enforcement of the Third-Party Releases and Exculpation Provision Pending Appeal Pursuant to Bankruptcy Rule 8007 and Memorandum of Points and Authorities* [Docket No. 2185]; *see also Order Denying Motion to Stay* [Case No. 3:21-cv-167 (DJN) Docket No. 34].

Reorganized Debtors and GUC Trust worked to substantially consummate the transactions embodied in the Plan.

8.      Ultimately, the District Court vacated the Third-Party Release and Exculpation Provisions.  The District Court, however, expressly noted that it "[did] not seek to undo any transactions that have occurred in the Plan's undertaking," nor did the requested relief on appeal require the Bankruptcy Court to "unwind" the Plan.  Remand Opinion, at *78.  Instead, the District Court issued a Remand Opinion and Remand Order vacating the Confirmation Order and voiding the Third-Party Release and Exculpation Provision.  *See* Remand Order.

9.      Specifically, the District Court voided and severed the Third-Party Release Provision from the Plan and rendered the Third-Party Release Provision unenforceable.  The District Court also found "the Exculpation Provision to be overly broad," and therefore voided "the Exculpation Provision as currently drafted."  Remand Opinion, at *85.  The District Court, however, noted that "the Court believes that the Exculpation Clause could be redrafted to comply with applicable law" and therefore "REMAND[ED] this case to the Bankruptcy Court with instructions to redraft the Exculpation Provision in a manner consistent with this Opinion and then to proceed with confirmation of the Plan without the voided Third-Party Releases."  *See* Remand Opinion, at *85–86.

10.      To implement the District Court's Remand Opinion—and without disturbing the relief that would "negatively affect any third parties who relied on the confirmation of the Plan"[7]— the Debtors request that the Bankruptcy Court enter the Supplemental Order.  Specifically, the Supplemental Order requests the following relief:

- deeming the Plan confirmed as of the Confirmation Date and effective as of the Effective Date, subject to the revisions mandated in the Remand Opinion;

---

[7]    *See* Remand Opinion, at *79 (explaining that no post-confirmation transactions with third parties have occurred in reliance on the releases and that the merits of the appeal would not negatively affect third parties).

- severing the Third-Party Release Provision provided under Article VIII.F of the Plan and paragraph 119 of the Confirmation Order;

- modifying the term "Exculpated Parties" to be limited to estate fiduciaries and the Exculpation Provision provided in Section VIII.G of the Plan and paragraph 120 of the Confirmation Order to include a gatekeeper provision;

- adopting the record established at the Confirmation Hearing, the findings of fact made by the Bankruptcy Court in the Confirmation Order and Confirmation Memorandum Opinion, as modified and supplemented by the findings of fact made by the District Court in the Remand Opinion; and

- authorizing and ratifying all actions taken by the Debtors, the Reorganized Debtors, the Plan Administrator, or the GUC Trustee that are or were necessary or appropriate to implement the Plan.

11.    The above relief embodied in the Supplemental Order would not only implement the District Court's instructions, but also avoid substantial and unnecessary costs to the estates and further harm to countless third parties who have relied on the fully consummated relief granted in the Confirmation Order.  Accordingly, in the interests of finality and efficiency, the Reorganized Debtors respectfully submit that the Court should enter the Supplemental Order.

## **Jurisdiction and Venue**

12.    The United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court" or the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the Eastern District of Virginia*, dated August 15, 1984.  The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

13.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

14.    The bases for the relief requested herein is sections 105, 1127, 1129, and 1142 of title 11 of the United States Code (the "Bankruptcy Code").

**Relief Requested**

15.    By this Motion, the Reorganized Debtors respectfully request entry of the proposed Supplemental Order approving the Plan and Confirmation Order (as incorporated into the Supplemental Order) and implementing the relief granted in the Remand Opinion and Remand Order, including, among other things, (i) modifying and confirming the Plan consistent with the District Court's Remand Opinion, (ii) authorizing and ratifying all actions taken in reliance on the Confirmation Order by the Debtors, the Reorganized Debtors, the Plan Administrator, or the GUC Trustee, (iii) adopting the record at the Confirmation Hearing, the factual findings by this Court at Confirmation, in the Confirmation Order, and in its Confirmation Memorandum Opinion (as defined herein), the factual findings in the Remand Opinion, and any additional briefing and evidence presented at a hearing in support of this Motion, and (iv) granting related relief.

**Background**

**I.    The Chapter 11 Plan, Disclosure Statement, and Solicitation Process**

16.    On July 23, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code [Docket No. 1].  The Debtors filed their initial plan of reorganization and disclosure statement on July 31, 2020 [Docket Nos. 154; 155].   On September 9, 2020, the Debtors filed an amended Plan and Disclosure Statement. [Docket Nos. 564, 565].  On September 11, 2020, the Bankruptcy Court entered an order that, among other things, approved the adequacy of the Disclosure Statement and set dates and deadlines related to confirmation of the Plan (the "Disclosure Statement Order") [Docket No. 592].  Shortly

thereafter, the Debtors filed solicitation versions of the amended Plan and Disclosure Statement [Docket Nos. 600, 601].

17.      Pursuant to the Disclosure Statement Order, the deadline for all Holders of Claims and Interests entitled to vote on the Plan to cast their ballots was October 13, 2020, at 5:00 p.m., prevailing Eastern Time (the "Voting Deadline").  On November 13, 2020, the Debtors filed the Voting Report reflecting that at least one Voting Class voted in favor of accepting the Plan at each Debtor.  The initial deadline for parties in interest to file objections to the Plan was October 13, 2020, at 5:00 p.m., prevailing Eastern Time (the "Initial Objection Deadline") and the initial hearing to consider Confirmation was scheduled for November 17, 2020, at 1:00 p.m., prevailing Eastern Time.  On November 13, 2020, the Debtors filed their initial confirmation brief and on November 20, 2020, filed a reply to objections and the *Notice of Filing of Proposed Order Confirming the Amended Joint Chapter 11 Plan of Reorganization of Ascena Retail Group, Inc. and Debtor Affiliates* [Docket No. 1167].

18.      Following entry of the Disclosure Statement Order, the Debtors caused their noticing and balloting agent, Prime Clerk LLC ("Prime Clerk"), to distribute solicitation packages (the "Solicitation Packages") containing the Disclosure Statement, the Plan, the Confirmation Hearing Notice, applicable ballots, and other relevant documents, to all holders of Claims entitled to vote on the Plan as of September 10, 2020 (the "Voting Record Date").  Prime Clerk transmitted the Solicitation Packages via first class or electronic mail on the Voting Deadline.  Prime Clerk then issued their final tabulation of the ballots reflecting that at least one class at each Debtor entitled to vote under the Plan voted to accept the Plan.  *See* Voting Report [Docket No. 1135].

19.     Following the filing of the Plan, the initial confirmation brief and reply, and the initial confirmation order, the Debtors' determined to pursue a sale transaction for the remainder of the Debtors' assets and business, as further described below.

## II.    The Sale and Marketing Process

20.     Shortly after the Petition Date, the Debtors received approval of a stalking horse bid for the Catherines assets with a base purchase price in the amount of $16 million.  After further marketing and an auction process, the Debtors obtained and pursued a higher and better bid of $40.8 million for the Catherines assets.  On September 22, 2020, the Court entered an *Order (I) Approving the Definitive Purchase Agreement, (II) Authorizing the Sale of the Catherines Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, and (III) Granting Related Relief* (the "Catherines Sale Order" or "Catherines Sale").

21.     In parallel with the Catherines Sale, the Debtors began a marketing process for the sale of the Justice assets.  The Debtors initially sought approval of a stalking horse bid for the Justice assets with a base purchase price of $35 million; however, the Debtors ultimately obtained an alternative stalking horse bid with an increased purchased price of $44 million.  After further marketing and an auction process, the Debtors obtained a higher purchase price of $71 million (subject to certain adjustments) for the Justice assets.  On November 12, 2020, the Bankruptcy Court entered an *Order (I) Approving the Sale of the Justice Assets Free and Clear of all Liens, Claims and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* (the "Justice Sale Order" or "Justice Sale").

22.     In addition to pursuing confirmation, the Catherines Sale, and the Justice Sale, the Debtors conducted a comprehensive marketing process for the potential sale of the Debtors'

remaining businesses, which included the Lane Bryant brand and the Premium business segment (the latter being comprised of Ann Taylor, LOFT, and Lou & Grey).  On August 14, 2020, the Debtors received an indication of interest from Premium Apparel LLC (the "Buyer"), an affiliate of Sycamore Partners Management, L.P. that valued the Debtors' Lane Bryant and Premium business segments between $450 million and $550 million.  The parties ultimately achieved consensus around the terms of the Sale Transaction and, on November 26, 2020, executed the purchase agreement between certain of the Debtors and the Buyer.  On the same date, the Debtors filed a motion seeking approval of the Premium and Lane Bryant sale transaction for a purchase price of $540 million (subject to certain adjustments).  On December 8, 2020, the Bankruptcy Court entered an *Order (I) Approving the Assumption and Assignment of Certain Non-Real Property Contracts and Real Property Leases, (II) Approving the Sale of Premium and Lane Bryant and Certain Other Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (IV) Establishing Rejection Procedures, and (V) Granting Related Relief* [Docket No. 1295] (the "Premium Brands Sale Order," and, together with the Catherines Sale Order and the Justice Sale Order, the "Sale Orders").[8]

## III.    Initial Confirmation of the Chapter 11 Plan

23.    Following entry of the Premium Brands Sale Order, on December 30, 2020, the Debtors filed the *Notice of Filing of Third Amended Joint Chapter 11 Plan of Reorganization of Ascena Retail Group, Inc. and Its Debtor Affiliates* [Docket No. 1403], which contemplated the sale of all the Debtors' business, as well as a wind-down of the Debtors' estates following the consummated sale transaction.  Specifically, the Plan contemplated, among other things, satisfying

---

[8]    The Sale Orders were not appealed and, accordingly, are in full force and effect.  In addition, the distributions made on account thereof and/or as set forth in the Plan and Confirmation Order should remain undisturbed.

all Allowed Administrative Claims and Allowed Priority Claims asserted against the Debtors' estates, providing significant cash recoveries to the Debtors' creditors, including the Term Lenders and Unsecured Claims, and ensuring the efficient resolution of all remaining issues in these chapter 11 cases through the appointment of the Plan Administrator and GUC Trustee, and establishment of the GUC Trust.

24.    In furtherance of the amended Plan, the Debtors provided notice of adjournment of hearing to consider confirmation of the Plan (the "Confirmation Hearing") to February 25, 2021, at 1:00 p.m., prevailing Eastern Time.  Parties were also notified that the plan objection deadline for filing new objections to the Plan was February 4, 2021, at 5:00 p.m., prevailing Eastern Time (the "Amended Objection Deadline").  Additionally, prior to the Confirmation Hearing, the Debtors filed with the Bankruptcy Court the *Fourth Amended Plan Supplement* and the *Fifth Amended Plan Supplement*, which included, among other things, exhibits of assumed executory contracts and unexpired leases, rejected executory contracts and unexpired leases, retained causes of action, the identity of the GUC Trustee, the identity of the Plan Administrator, and the GUC Trust Agreement [Docket Nos. 1704, 1757].

25.    Prior to the Confirmation Hearing, the Debtors resolved a number of objections, facing only three outstanding, material objections from the U.S. Trustee, the Securities and Exchange Commission, and the Securities Lead Plaintiffs [Docket Nos. 411, 746, 889, 1622, 1697].  The objections largely challenged the Plan's third-party release and exculpation provisions.

26.    At the Confirmation Hearing, the Bankruptcy Court ultimately overruled the objections and confirmed the Plan.  The Bankruptcy Court described the result as a "terribly successful case," and noted that the restructuring transactions embodied an "absolutely phenomenal" outcome in the retail environment, noting that it "allowed the enterprise to continue

so that jobs can be preserved, vendors can continue to supply their product, and we have the enterprise value that's going to go on." Conf. H'rg Transcript, at *109.  The Bankruptcy Court then entered the *Order Confirming the Amended Joint Chapter 11 Plan (Technical Modifications) of Mahwah Bergen Retail Group, Inc. (f/k/a Ascena Retail Group, Inc.) and Its Debtor Affiliates* [Docket No. 1811] (the "Confirmation Order").  On March 5, 2021, the Debtors filed the *Notice of (I) Entry of Order Confirmation the Debtors' Amended Chapter 11 Plans and (II) Occurrence of the Effective Date* [Docket No. 1845] (the "Effective Date").   In addition to entering the Confirmation Order, on March 9, 2021, the Bankruptcy Court also issued its Memorandum Opinion supplementing the Bankruptcy Court's findings of facts and conclusions of law set forth in the Confirmation Order (the "Confirmation Memorandum Opinion") [Docket No. 1855].  On March 17, 2021, the Bankruptcy Court entered a *Final Decree Closing Certain Chapter 11 Cases* [Docket No. 1899] closing certain of the Debtors' cases while the lead case remained open pending entry of a final decree.

**IV.    Appeal**

27.    On March 11, 2021, the Securities Lead Plaintiffs filed a *Notice of Appeal of Memorandum Opinion and Order Confirming the Amended Joint Chapter 11 Plan (Technical Modifications) of Mahwah Bergen Retail Group, Inc. (f/k/a Ascena Retail Group, Inc.) and Its Debtor Affiliates* [Docket No. 1859] and *Securities Lead Plaintiffs' Notice of Appeal of Memorandum Opinion and Order Denying Securities Lead Plaintiffs' Motion for Entry of an Order (I) Authorizing Lead Plaintiffs to Opt Out of Third-Party Releases on Behalf of the Class Or, in the Alternative, (II) Certifying the Class for a Limited Purpose Pursuant to Fed. R. Bankr. P. 7023 and 9014 and Fed. R. Civ. P. 23* [Docket No. 1860].  Shortly thereafter, on March 25, 2021, the U.S. Trustee filed its *Notice of Appeal* [Docket No. 1937] appealing the Confirmation

Memorandum Opinion and entry of the Confirmation Order. On April 29, 2021, the District Court

for the Eastern District of Virginia (the "District Court") entered an *Order Consolidating*

*Bankruptcy Appeal* [Docket No. 2088], which consolidated the Securities Lead Plaintiffs' and U.S.

Trustee's appeal (together, the "Confirmation Appeal").[9] The consolidated Confirmation Appeal

challenged mainly, among other things,[10] the Plan's Third-Party Release and Exculpation

Provisions.

28.    On March 30, 2021, the U.S. Trustee filed the *Motion of the United States Trustee*

*for a Stay of Enforcement of the Third-Party Releases and Exculpation Clause Pending Appeal*

*Pursuant to Bankruptcy Rule 8007 and Memorandum of Points and Authorities* [Docket No. 1962]

(the "Bankruptcy Court Stay Motion") seeking to stay enforcement of the Disclosure Statement

Order and Confirmation Order pending adjudication of the Confirmation Appeal. On April 23,

2021, the Debtors filed the *Debtors' Objection to the United States Trustee's Motion for a Stay*

*Pending Appeal* [Docket No. 2081]. On May 13, 2021, the Court conducted a hearing on the U.S.

Trustee's Bankruptcy Court Stay Motion; and, on May 28, 2021, the Court issued its Memorandum

Opinion setting forth the Court's findings of fact and conclusions of law [Docket No. 2184]

(the "Bankruptcy Stay Opinion") and its *Order Denying Motion of the United States Trustee for a*

*Stay of Enforcement of the Third-Party Releases and Exculpation Provision Pending Appeal*

*Pursuant to Bankruptcy Rule 8007 and Memorandum of Points and Authorities* [Docket No. 2185]

(the "Bankruptcy Court Stay Order").

---

[9]    The Lead Case docket number is 3:21-cv-167 (DJN) and the Consolidated docket number is 3:21-cv-00205. Documents filed on appeal are filed under the Lead Case docket number.

[10]    The Securities Lead Plaintiffs also challenged the Court's *Order Denying Securities Lead Plaintiffs' Motion for Entry of an Order (I) Authorizing Lead Plaintiffs to Opt Out of Third-Party Releases on Behalf of the Class or, in the Alternative, (II) Certifying the Class for a Limited Purpose Pursuant to Fed. R. Bankr. P. 7023 and 9014 and Fed. R. Civ. P. 23* [Docket No. 1842]. *See Notice of Appeal* [Docket No. 1860].

29.     The U.S. Trustee then filed its *Motion for Limited Stay Pending Appeal by Appellant John P. Fitzgerald, III Acting United States Trustee, Region 4* [Case No. 3:21-cv-167 (DJN) Docket No. 18] with the District Court (the "District Court Stay Motion").  The Debtors filed a *Response in Opposition to Motion for Limited Stay Pending Appeal by Appellant John P. Fitzgerald, III Acting United States Trustee, Region 4* with the District Court [Case No. 3:21-cv-167 (DJN) Docket No. 27].  On June 28, 2021, the District Court issued its Memorandum Opinion [Case No. 3:21-cv-167 (DJN) Docket No. 33] (the "District Court Stay Opinion") and denied the U.S. Trustee's District Court Stay Motion in its accompanying *Order Denying Motion to Stay* [Case No. 3:21-cv-167 (DJN) Docket No. 34] (the "District Court Stay Order").

30.     Following entry of the District Court Stay Order denying a stay pending appeal, the District Court issued an *Order Scheduling Oral Argument; Requiring Additional Briefing* [Docket No. 2505], which set oral argument for December 20, 2021 (the "Appellate Oral Argument"). Prior to the Appellate Oral Argument, the District Court issued several orders for additional briefing, and the parties filed corresponding briefs with the District Court.[11]

---

[11] *See, e.g., Opening Brief of Appellants Joel Patterson and Michaella Corporation* [Case No. 3:21-cv-167 (DJN) Docket No. 30]; *Brief of Appellee John P. Fitzgerald, III, Acting United States Trustee for Region 4* [Case No. 3:21-cv-167 (DJN) Docket No. 35]; *Brief of the Securities and Exchange Commission as Amicus Curiae in Support of Appellant, John P. Fitzgerald, III, Acting United States Trustee for Region 4 for Reversal of Memorandum Opinion and Order* [Case No. 3:21-cv-167 (DJN) Docket No. 39]; *Response Brief for Appellee Mahwah Bergen Retail Group, Inc.* [Case No. 3:21-cv-167 (DJN) Docket No. 43]; *Reply Brief of Appellant John P. Fitzgerald, III, Acting United States Trustee for Region 4* [Case No. 3:21-cv-167 (DJN) Docket No. 44]; *Order Requiring Additional Briefing* [Case No. 3:21-cv-167 (DJN) Docket No. 49]; *Brief in Response to Court's Order of November 5, 2021, by Appellant John P. Fitzgerald, III, Acting United States Trustee for Region 4* [Case No. 3:21-cv-167 (DJN) Docket No. 51]; *Supplemental Brief of Appellants Joel Patterson and Michaella Corporation* [Case No. 3:21-cv-167 (DJN) Docket No. 52]; *Supplemental Brief for Appellee Mahwah Bergen Retail Group, Inc.* [Case No. 3:21-cv-167 (DJN) Docket No. 53]; *Order Requiring Supplemental Briefing* [Case No. 3:21-cv-167 (DJN) Docket No. 54]; *Second Supplemental Brief of Appellants Joel Patterson and Michaella Corporation* [Case No. 3:21-cv-167 (DJN) Docket No. 57] *Second Supplemental Brief for Appellee Mahwah Bergen Retail Group, Inc.* [Case No. 3:21-cv-167 (DJN) Docket No. 58]; *Second Supplemental Brief of Appellant John P. Fitzgerald, III, Acting United States Trustee for Region 4* [Case No. 3:21-cv-167 (DJN) Docket No. 59]; *Order Requiring Supplemental Briefing* [Case No. 3:21-cv-167 (DJN) Docket No. 63]; *Third Supplemental Brief of Appellee Mahwah Bergen Retail Group, Inc.* [Case No. 3:21-cv-167 (DJN) Docket No. 64]; *Third Supplemental Brief of Appellants Joel Patterson and Michaella Corporation* [Case No. 3:21-cv-167 (DJN) Docket No. 65]; *Brief in Response to Court's Order of December 13, 2021, by Appellant John P. Fitzgerald, III, Acting United States Trustee for Region 4* [Case No. 3:21-cv-167 (DJN) Docket No. 66].

31.     After the Appellate Oral Argument, on January 13, 2021, the District Court issued its Remand Opinion with instructions to the Bankruptcy Court, entered the Remand Order, and entered an *Order Requiring Submission of Approval of Petition for Attorney's Fees to District Court* [Case No. 3:21-cv-167 (DJN) Docket No. 81] (the "District Court Fees Order").   The Remand Order and Remand Opinion vacated the Confirmation Order, voided and severed the Plan's Third-Party Release Provisions, and voided the Plan's Exculpation Provision.   The District Court then remanded the chapter 11 cases to this Court to redraft the Exculpation Provision in a manner consistent with the Remand Opinion, and to proceed with confirmation of a modified chapter 11 plan without the severed Third-Party Release Provision.   *See* Remand Order.   These chapter 11 cases were then reassigned to the Honorable Frank J. Santoro, Chief Judge for the United States Bankruptcy Court for the Eastern District of Virginia, pursuant to the *Order Reassigning Case* [Docket No. 2551].

## Basis for Relief

### A.     The Bankruptcy Court Has Authority to Modify and Confirm the Plan

32.     The Remand Order vacated the Plan's Third-Party Release and Exculpation Provisions; however, the District Court expressly noted in its Remand Opinion that the granted relief would not "unwind" or otherwise "threaten post-confirmation transactions" necessary to implement the Plan.   Remand Opinion, at *79.   The Reorganized Debtors, therefore, are focused on a path-forward that implements the District Court's instructions on remand, while also preserving post-confirmation relief that is necessary to implement the Plan and has been relied upon in good faith by third parties.

33.     A plan proponent may modify its plan at any time before confirmation if the modified plan meets the requirements of section 1122 and section 1123 of the Bankruptcy Code. 11 U.S.C. § 1127(a).   "Numerous courts have held that further disclosure and re-solicitation of

16

votes on a modified plan is only required when the modification materially *and* adversely affects

parties who previously voted for the plan." *In re Art & Architecture Books of the 21st Century*,

No. 2:13-BK-14135-RK, 2016 WL 1118743, at *5 (Bankr. C.D. Cal. Mar. 18, 2016); *see also,*

*e.g.*, *Enron Corp. v. The New Power Co. (In re The New Power Co.)*, 438 F.3d 1113, 1118 (11th

Cir. 2006) ("[A]s an initial matter, we consider whether there was any material and adverse

modifications from the First Amended Plan."); *In re Am. Trailer & Storage, Inc.*, 419 B.R. 412,

419 (Bankr. W.D. Mo. 2009) ("However, if a modification materially and adversely affects any of

the voting parties' interests, who previously voted for the plan, they must be afforded an

opportunity to change their vote."); *Resolution Trust Corp. v. Best Prods. Co.*, 177 B.R. 791, 802

(S.D.N.Y. 1995) (noting that the key inquiry was whether the modification materially altered the

plan so that a claimant's treatment was adversely affected).

34.    Moreover, section 1142(b) of the Bankruptcy Code provides that the court "may

direct the debtor and any other necessary party . . . to perform any . . . act . . . that is necessary for

the consummation of the plan."  11 U.S.C. § 1142(b).  Courts have recognized that "pursuant to

section 1142(b), the court may issue any order necessary for the implementation of the plan." *In*

*re Worldcom, Inc.*, 352 B.R. 369 (Bankr. S.D.N.Y. 2006) (quoting 8 Collier on Bankruptcy ¶

1142.03 (15th ed. 2006)); *see also Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d

581, 587 n.11 (9th Cir. 1993).  Pursuant to section 1142(b), the court may also issue an order

directing the debtor or a necessary non-debtor party to perform any act required for plan

consummation.  *See, e.g.*, *In re Chateaugay Corp.*, 201 B.R. 48, 66 (Bankr. S.D.N.Y. 1996) (noting

that the intent of section 1142(b) is to assure that the terms and provisions of a confirmed chapter

11 plan are carried out until the plan is completed and the final decree is entered); *In re Riverside*

*Nursing Home*, 137 B.R. 134 (Bankr. S.D.N.Y. 1992) (noting that the bankruptcy court may direct a party to perform any act necessary for consummation).

35.     Further, bankruptcy courts have power to fashion relief pursuant to their equitable powers under Section 105(a) of the Bankruptcy Code and as necessary to administer the estate under Federal Rule of Bankruptcy Procedure 3020(d).  Section 105(a) of the Bankruptcy Code provides, in pertinent part, that the Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Federal Rule of Bankruptcy Procedure 3020(d) further provides that "[n]otwithstanding entry of the order of confirmation, the court may issue any other order necessary to administer the estate."  Fed. R. Bankr. P. 3020(d).

36.     Courts have long recognized that "bankruptcy courts are equitable tribunals that apply equitable principles in the administration of bankruptcy proceedings."  *See Local Loan Co. v. Hunt*, 292 U.S. 234, 240 (1934); *see also United States v. Energy Res. Co.*, 495 U.S. 545, 549 (1990); *see also Johnson v. Home State Bank*, 501 U.S. 78, 88 (1991) (per curiam) (noting that "[t]he Code also states that the bankruptcy courts may 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions' of the Code . . . [t]hese statutory directives are consistent with the traditional understanding that bankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships."); *In re Combustion Eng'g Inc.*, 391 F.3d 190, 235 (3d Cir. 2004) ("Bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process.") (citations omitted); *In re Kestell*, 99 F.3d 146, 148–49 (4th Cir. 1996).  Under section 105(a) of the Bankruptcy Code, the Court has expansive equitable power to fashion any order or decree that is in the interest of preserving or protecting the value of a debtor's estate.  *See Comm. of Equity Sec. Holders v. Lionel*

*Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1069 (2d Cir. 1983) ("[A] bankruptcy judge must have substantial freedom to tailor his orders to meet differing circumstances."); *In re Keene Corp.*, 168 B.R. 285, 292 (Bankr. S.D.N.Y. 1994) (noting that a bankruptcy court can "use its equitable powers to assure the orderly conduct of the reorganization").

### B. The Plan Modifications Should Be Approved Pursuant to the Relief Contemplated in the Remand Opinion

37.    As the District Court noted in its Remand Opinion, "the [United States] Trustee does not seek to undo any transactions that have occurred in the Plan's undertaking. . . the requested relief — invalidating all or parts of the releases at issue — would only prospectively affect the ability of parties to bring suit based on past events."  Remand Opinion, at *78.  The District Court provided that the requested relief "would require no unwinding," nor would the relief "alter any creditor's recovery or affect the bankruptcy estate in any way."  Remand Opinion, at *77, 79.

38.    Specifically, the District Court "SEVER[ED] the voided Third-Party Releases from [the] Debtors' Reorganized Plan" and "REMAND[ED] this case to the Bankruptcy Court with instructions to redraft the Exculpation Provision in a manner consistent with [the] Opinion and then to proceed with confirmation of the Plan without the voided Third-Party Releases."  Remand Opinion, at *85-86.  Thus, absent the vacated provisions modified herein, the provisions of the Plan and Confirmation Order otherwise continue to comply with sections 1129(a)-(b) of the Bankruptcy Code and remain unchallenged.  *See* 11 U.S.C. § 1129(a)-(b); Confirmation Memorandum Opinion, at *14 (supporting confirmation under 11 U.S.C. § 1129); *see also* Remand Opinion, at *86 n.15 ("[T]he Bankruptcy Court possesses constitutional authority to confirm Debtors' Reorganization Plan without the voided Third-Party Releases.  Additionally, no party objects to any other aspect of the Plan than addressed here.").

39.     The Supplemental Order, therefore, modifies the Plan to provide that the Third-Party Release Provisions should be deemed severed from the Plan and Confirmation Order, effective as of the entry of the Supplemental Order.  Section 1127(a) of the Bankruptcy Code allows the plan proponent to modify a plan before confirmation, and the Plan specifically contemplates such relief, providing that "[i]f, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable . . . ."  *See* Plan, at XII.J.  Further, as the District Court noted in its Remand Opinion, it "step[ped] into the shoes of the Bankruptcy Court," and after doing so, severed the Third-Party Releases from the Plan.  Remand Opinion, at *66.

40.     Additionally, the Supplemental Order modifies the Exculpation Provision to contain a gatekeeper provision and "be limited to the fiduciaries who have performed necessary and valuable duties in connection with the bankruptcy case."  *See* Remand Order, at *84.  Thus, to further implement the District Court's modifications, the Debtors seek an amended term of "Exculpated Parties," which is limited to estate fiduciaries who served from the Petition Date through the Effective Date of the Plan.  Specifically, the term "Exculpated Parties" should be modified to provide only for: "(a) each of the Debtors; (b) the Creditors' Committee and its members; (c) each current and former Affiliate of each Entity in the foregoing clause (a) through the following clause (d); and (d) the directors, officers, and restructuring professionals of each Entity in the foregoing clauses (a) through (c); *provided* that, in each case, an Entity shall be an "Exculpated Party" only to the extent that it has performed necessary and valuable duties in connection with the chapter 11 cases."  Additionally, in accordance with the Remand Opinion, the Exculpation Provision provided in Article VIII.G of the Plan should be modified to include a

20

gatekeeper provision, which, as provided in the Supplemental Order, provides that parties must first obtain approval of the Bankruptcy Court to determine whether a colorable claim against an Exculpated Party exists, and if so, whether a party is authorized by the Bankruptcy Court to bring such claim against an Exculpated Party.

41.     The above revisions requested in this Motion are necessary modifications under section 1127(a) of the Bankruptcy Code that do not require re-solicitation or additional disclosure pursuant to section 1127(c) of the Bankruptcy Code.  *See* 11 U.S.C. § 1127(a), (c); *see In re Cellular Information Sys., Inc.*, 171 B.R. 926, 929 n.6 (Bankr. S.D.N.Y. 1994) ("I find that such changes are nonmaterial modifications which do not require resolicitation of the respective impaired classes of creditors and equity security holders").  Here, the modifications are pre-confirmation alterations contemplated by the Plan and do not run afoul of section 1127(a) of the Bankruptcy Code.  The District Court treated the Confirmation Order as a "Report and Recommendation with proposed findings of fact and conclusions of law,"[12] determined that the Third-Party Release and Exculpation Provisions were unenforceable,[13] and severed the Third-Party Release Provision from the Plan, pursuant to its terms.[14]

42.     Article XII of the Plan specifically provides that "[i]f, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable,

---

[12]   *See* Remand Opinion, at *40 ("Having determined that the Bankruptcy Court violated *Stern* by exceeding its authority, the Court must vacate the Confirmation Order and treat it as a Report and Recommendation with proposed findings of fact and conclusions of law, which the Court reviews *de novo*.").

[13]   *See* Remand Opinion, at *45, 84 (finding the Bankruptcy Court "erred on both fronts" in finding the releases consensual and whether the releases were permissible under the seven-factor *Behrmann* analysis, and further, that the "Exculpation Provision extends beyond the permissible parties and fails to contain a gatekeeper function").

[14]   *See* Remand Opinion, at *66 (noting that "after having found a *Stern* violation and vacated the Confirmation Order, the Plan now comes before the Court under Rule 8018.1 'as proposed findings of fact and conclusions of law.'  Therefore, the Court steps into the shoes of the Bankruptcy Court in terms of the Nonseverability Provisions.  That is, the first half of the Nonseverability provision remains the operative provision, and the Plan itself has not declared the Third-Party Releases nonseverable").

the Bankruptcy Court shall have the power to alter and interpret such provision to make it valid or

enforceable to the maximum extent practicable . . . and such term or provision shall then be

applicable as altered or interpreted."  Plan, Art.XII.J.  Moreover, because the District Court treated

the Confirmation Order as proposed findings of fact and conclusions of law—and therefore before

confirmation—and determined the Third-Party Release and Exculpation Provisions were

unenforceable, Article XII.J of the Plan further provides that such terms may be altered or severed

from the Plan and that "the remainder of terms and provisions of the Plan will remain in full force

and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or

interpretation."  Plan Art.XII.J.  Thus, the District Court's modifications are contemplated in the

Plan and are solely technical because the Plan may be confirmed as altered without adversely

affecting a claimant's treatment and without requiring additional disclosure or resolicitation.  *See

Resolution Trust Corp. v. Best Prods. Co.*, 177 B.R. 791, 802 (S.D.N.Y. 1995) (noting that the key

inquiry was whether the modification materially altered the plan so that a claimant's treatment was

adversely affected); *see also In re Armstrong World Indus., Inc.*, 348 B.R. 136, 168 (D. Del. 2006)

(holding that no additional disclosure or notice required where post-solicitation modifications

merely clarified certain provisions of the plan).

### C.     The Court Should Grant Related Relief to Aid in Implementing and Effectuating the Plan

43.     The revisions requested herein are supported by the record, both at the

Confirmation Hearing and as provided in the Remand Opinion.  Thus, to efficiently maintain the

factual findings necessary to support the Supplemental Order, the Reorganized Debtors also

request that the Court adopt the record submitted in the Debtors' previous briefing,[15] by this Court

---

[15]  *See Declaration of Carrie W. Teffner in Support of Confirmation of the Amended Joint Chapter 11 Plan (Technical Modifications) of Mahwah Bergen Retail Group, Inc. (f/k/a Ascena Retail Group, Inc.) and Its Debtor Affiliates* [Docket No. 1760]; *Declaration of William Kosturos in Support of Confirmation of the Amended Joint*

at Confirmation, and by the District Court in its Remand Opinion—as may be supplemented by additional briefing and evidence submitted at a hearing to consider this Motion.

44.    Additionally, actions taken pursuant to the provisions of the Confirmation Order that the Remand Order did not void should be deemed approved as of the original Confirmation Date, and effective as of the original Effective Date.  Numerous courts have allowed the use of retroactive orders to reflect events "that actually took place."  *See Glynee v. Wilmed Healthcare*, 699 F.3d 380, 383-84 (4th Cir. 2012); *see also In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (stating "the court's power to grant retroactive relief is derived from the bankruptcy court's equitable powers . . . .").  As the Supreme Court noted in *Acevedo*, "[f]ederal courts may issue *nunc pro tunc orders* . . . to reflect the reality of what has already occurred . . ." but "the court cannot make the record what it is not."  *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 140 S.Ct. 696, 701 (2020).

45.    Here, the Supplemental Order reflects the reality of events that have already occurred pursuant to the Confirmation Order and within the confines of the Bankruptcy Court's jurisdiction.  Upon the Effective Date, the Reorganized Debtors, Plan Administrator, and GUC Trustee consummated a series of transactions upon which they and many other parties relied, and which transactions cannot be unwound without prejudicing all of them.  Thus, in order to maintain the *status quo* and effectively and efficiently implement the Remand Opinion, the Court should authorize, approve, and ratify all actions taken by the Reorganized Debtors, Plan Administrator, and GUC Trustee that they took in reliance on the effectiveness of the original Confirmation Order

---

*Chapter 11 Plan (Technical Modifications) of Mahwah Bergen Retail Group (f/k/a Ascena Retail Group, Inc.) and Its Debtor Affiliates* [Docket No. 1761]; *Debtors Memorandum of Law in Support of Confirmation of the Amended Joint Chapter 11 Plan (Technical Modifications) of Mahwah Bergen Retail Group, Inc. (f/k/a Ascena Retail Group, Inc.) and Its Debtor Affiliates* [Docket No. 1762].

to carry out the Plan and should deem the Plan confirmed as of the original Confirmation Date, subject to the modifications contained herein and upon entry of the Supplemental Order.

46.      The Creditors' Committee supports and joins in this Motion as co-movant.

## Notice

47.      The Reorganized Debtors will provide a notice, filed concurrently with this Motion, via first class mail, facsimile or email (where available) to all parties in interest in accordance with the Notice Procedures as set forth in the *Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures, and (II) Granting Related Relief* [Docket No. 79].    The Reorganized Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Reorganized Debtors respectfully request that the Court enter the

Supplemental Order.

Dated:   January 26, 2022

| | |
|---|---|
| | /s/ Cullen D. Speckhart |
| **KIRKLAND & ELLIS LLP** | **COOLEY LLP** |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | Cullen D. Speckhart (VSB 79096) |
| Edward O. Sassower, P.C. | Olya Antle (VSB 83153) |
| Steven N. Serajeddini, P.C. (admitted *pro hac vice*) | 1299 Pennsylvania Avenue, NW, Suite 700 |
| 601 Lexington Avenue | Washington, DC 20004-2400 |
| New York, New York 10022 | Telephone:    (202) 842-7800 |
| Telephone:    (212) 446-4800 | Facsimile:    (202) 842-7899 |
| Facsimile:    (212) 446-4900 | Email:    cspeckhart@cooley.com |
| Email:    edward.sassower@kirkland.com | oantle@cooley.com |
| steven.serajeddini@kirkland.com | |

-and-

John R. Luze (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    john.luze@kirkland.com

*Co-Counsel to the Reorganized Debtors*

**<u>Exhibit A</u>**

**Proposed Order**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

-and-

John R. Luze (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Co-Counsel to the Reorganized Debtors*

**COOLEY LLP**
Cullen D. Speckhart (VSB 79096)
Olya Antle (VSB 83153)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone:     (202) 842-7800
Facsimile:     (202) 842-7899

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## NORFOLK DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RETAIL GROUP, INC., *et al.*,[16] | ) | Case No. 20-33113 (FJS) |
| | ) | |
| Reorganized Debtors. | ) | (Jointly Administered) |
| | ) | |

## ORDER (A) MODIFYING AND
## CONFIRMING THE AMENDED CHAPTER 11 PLAN
## CONSISTENT WITH THE DISTRICT COURT'S MEMORANDUM
## OPINION, (B) RATIFYING ACTIONS TAKEN IN RELIANCE ON THE
## ORDER DATED FEBRUARY 25, 2021, AND (C) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of the above-captioned reorganized debtors (collectively,

the "Reorganized Debtors," and before the effective date of the chapter 11 plan confirmed in these

cases, the "Debtors"), on remand to this Court by the United States District Court for the Eastern

District of Virginia (the "District Court") pursuant to the Memorandum Opinion [Docket No.

---

[16]    A complete list of each of the Reorganized Debtors in these chapter 11 cases may be obtained on the website of
the Debtors' claims and noticing agent at http://cases.primeclerk.com/ascena.  The location of Reorganized
Debtor Mahwah Bergen Retail Group, Inc.'s principal place of business and the Debtors' service address in these
chapter 11 cases is 933 MacArthur Boulevard, Mahwah, New Jersey 07430.

2548] (the "Remand Opinion") and *Order Remanding Case to Bankruptcy Court; Ordering Reassignment* [Docket No. 2549] (the "Remand Order") entered by the District Court on January 13, 2022,  for entry of this order (this "Order")[17] modifying and confirming the *Amended Joint Chapter 11 Plan (Technical Modifications) of Mahwah Bergen Retail Group, Inc. (f/k/a Ascena Retail Group, Inc.) and Its Debtor Affiliates* [Docket No. 1794] (as modified by this Order, the "Plan"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the Eastern District of Virginia*, dated August 15, 1984; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and the Remand Opinion and Remand Order having vacated *Order Confirming the Amended Joint Chapter 11 Plan (Technical Modifications) of Mahwah Bergen Retail Group, Inc. (f/k/a Ascena Retail Group, Inc.) and Its Debtor Affiliates* [Docket No. 1811] (the "Confirmation Order") and directed the Debtors to strike the Third-Party Release Provision contained in Article VIII.F of the Plan and modify the Exculpation Provision contained in Article VIII.G of the Plan in a manner consistent with the Remand Opinion and seek re-confirmation of the Plan as so modified; and this Court having determined that the legal and factual bases establish just cause for confirmation of the Plan as

---

[17] Capitalized terms used but not defined herein shall have the meaning set forth in the *Amended Joint Chapter 11 Plan (Technical Modifications) of Mahwah Bergen Retail Group, Inc. (f/k/a Ascena Retail Group, Inc.) and Its Debtor Affiliates* [Docket No. 1794] and the *Order Confirming the Amended Joint Chapter 11 Plan (Technical Modifications) of Mahwah Bergen Retail Group, Inc. (f/k/a Ascena Retail Group, Inc.) and Its Debtor Affiliates* [Docket No. 1811].

2

modified by this Order (including the record presented at the Confirmation Hearing,[18] the findings of fact and conclusions of law made by this Court in the Confirmation Order and its Memorandum Opinion (the "Confirmation Memorandum Opinion") [Docket No. 1855], the findings of fact made by the District Court in the Remand Opinion and the Remand Order, and the arguments and evidence presented at the hearing in support of this Motion, in each instance solely to the extent consistent with the Remand Order and Remand Opinion); and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted to the extent set forth herein.

2.      Subject to the limitations and modifications set forth in this Order, the Plan, as modified by this Order, is hereby deemed approved and confirmed under all applicable sections of the Bankruptcy Code, including section 1129, and applicable law, effective as of February 25, 2021 (the "Confirmation Date").  Except as expressly set forth herein, the relief granted by this Order shall be effective as of the Confirmation Date.

3.      The Effective Date (as defined in Article I.A.65 of the Plan) is hereby deemed to have occurred on March 5, 2021 (the "Effective Date").

4.      The Confirmation Order is hereby incorporated into this Order by reference, except to the extent modified by or inconsistent with this Order.

5.      Solely to the extent consistent with this Order, any distributions made or other actions taken in accordance with the Plan and/or Confirmation Order shall remain undisturbed.

---

[18]     *See Declaration of Carrie W. Teffner in Support of Confirmation of the Amended Joint Chapter 11 Plan (Technical Modifications) of Mahwah Bergen Retail Group, Inc. (f/k/a Ascena Retail Group, Inc.) and Its Debtor Affiliates* [Docket No. 1760]; *Declaration of William Kosturos in Support of Confirmation of the Amended Joint Chapter 11 Plan (Technical Modifications) of Mahwah Bergen Retail Group (f/k/a Ascena Retail Group, Inc.) and Its Debtor Affiliates* [Docket No. 1761]; *Debtors Memorandum of Law in Support of Confirmation of the Amended Joint Chapter 11 Plan (Technical Modifications) of Mahwah Bergen Retail Group, Inc. (f/k/a Ascena Retail Group, Inc.) and Its Debtor Affiliates* [Docket No. 1762].

3

6.    Article I.A.129 and VIII.F of the Plan and paragraph 119 of the Confirmation Order are hereby deemed stricken and are of no force or effect.  Any action taken at any time pursuant to Articles I.A.129 or VIII.F of the Plan or paragraph 119 of the Confirmation Order is hereby deemed void *ab initio*.

7.    The definition of "Exculpated Parties" in the Plan is deemed stricken in its entirety and replaced with the following:

> "*Exculpated Parties*" means, collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) the Creditors' Committee and its members; (c) each current and former Affiliate of each Entity in the foregoing clause (a) through the following clause (d); and (d) the directors, officers, and restructuring professionals of each Entity the foregoing in clauses (a) through clause (c); *provided* that, in each case, an Entity shall be an "Exculpated Party" only to the extent that it has performed necessary and valuable duties in connection with the chapter 11 cases.

8.    The Exculpation Provision in Section VIII.G of the Plan and paragraph 120 of the Confirmation Order shall be deemed stricken in their entirety and replaced with the following:

> Notwithstanding anything contained in the Plan to the contrary and to the extent permissible under the law, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Cause of Action or any claim arising from the Petition Date through the Effective Date related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, the Exit Facilities, the Backstop Commitment Letter, the DIP Financing Order, Cash Collateral Order, or any Restructuring Document, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, and the administration of the Plan, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, without the Bankruptcy Court (i) first

4

determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind, including, but not limited to actual fraud, willful misconduct, or gross negligence against an Exculpated Party, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan, and (ii) specifically authorizing a party to bring such claim or cause of action against any such Exculpated Party.  The Exculpated Parties have, and upon consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

9.    Upon entry of this Order, and solely to the extent consistent with this Order, as of the original Effective Date, the Debtors and Reorganized Debtors, as applicable, are hereby deemed to have been authorized to take all actions necessary or appropriate to carry out the Plan, as modified by this Order, and execute any documents, instruments, files, or records, to implement, consummate, or otherwise effectuate the Plan, as modified by this Order, as and to the extent set forth in the Confirmation Order (as modified by this Order), and all such actions are hereby ratified. The Plan Administrator, GUC Trustee, the Reorganized Debtors, and any other entity designated pursuant to the Plan (i) are and were authorized, empowered, and directed to execute, deliver, file, and record any document, and to take any action necessary or appropriate to implement, consummate, or otherwise effectuate the Plan in accordance with its terms (as modified by this Order) in all material respects, (ii) all such entities shall be bound by the terms and provisions of all documents executed and delivered as and to the extent set forth in the Plan and Confirmation Order (as modified by this Order), (iii) all such records and documents are and shall be deemed valid, binding, ratified, and effective as set forth in such records and documents, and (iv) no monies paid or other manner of consideration made by the Plan Administrator, the GUC Trustee, or the

Reorganized Debtors in reliance on the authority granted to them pursuant to and under the Plan or Confirmation Order shall be subject to disgorgement, claw back, avoidance or other forms of attack as a result of the Remand Opinion, the Remand Order, or this Order, and all such payments, transfers, and/or distributions shall be deemed subject to the terms of any applicable document or agreement governing the transfer of such monies.

10.     Notwithstanding, to the extent applicable, Bankruptcy Rules 3020(e), 6004(h), 7062, and 9014, this Order is effective immediately and not subject to any stay.

11.     This Order is a Final Order and the period in which an appeal must be filed will commence upon entry of this Order.

Dated: _____
Norfolk, Virginia                          _____
                                            United States Bankruptcy Judge

WE ASK FOR THIS:

/s/ Cullen D. Speckhart

**KIRKLAND & ELLIS LLP**              **COOLEY LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**    Cullen D. Speckhart (VSB 79096)
Edward O. Sassower, P.C.                 Olya Antle (VSB 83153)
Steven N. Serajeddini, P.C. (admitted *pro hac vice*)    1299 Pennsylvania Avenue, NW, Suite 700
601 Lexington Avenue                     Washington, DC 20004-2400
New York, New York 10022                 Telephone:       (202) 842-7800
Telephone:       (212) 446-4800          Facsimile:       (202) 842-7899
Facsimile:       (212) 446-4900

-and-

John R. Luze (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:       (312) 862-2000
Facsimile:       (312) 862-2200

*Co-Counsel to the Reorganized Debtors*

## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ Cullen D. Speckhart